## MICHAEL MOONEY v. DAILY NEWS COMPANY OF MINNEAPOLIS.[1]

December 8, 1911.

Nos. 17,372—(129).

**Offer and acceptance.**

> An offer of specified compensation to the person obtaining the highest vote based on paid subscriptions to a newspaper, after acceptance and part per-

1 Reported in 133 N. W. 573.

formance of the terms of the offer, becomes an executory contract between the person making and the person so accepting the terms of the offer.

**Alteration of terms.**

The person making such offer is bound by its terms after such acceptance, and cannot, without the consent of the other party, either change the terms of the offer or give to them an interpretation contrary to their true meaning.

**Performance — evidence.**

The plaintiff is shown by the evidence to have fully complied with the terms and conditions of an offer made by the defendant, and to have become entitled to the agreed compensation.

Action in the district court for Hennepin county to recover $1,250, the value of an automobile offered in a newspaper contest. The complaint alleged that defendant procured an automobile of specified manufacture and description, which it offered and promised to give to any person in a given territory entering the contest and securing the largest number of yearly paid-up subscriptions to defendant's newspaper, in accordance with certain rules governing the contest and published by it; that plaintiff pursuant to such proposition secured and paid to defendant in cash in advance a sufficient number of subscribers to entitle plaintiff under such rules to a credit of 1,059,000 votes, the highest number of votes obtained by any person in the contest, and thereby became entitled to the delivery of the car to him; that defendant refused to deliver it to him and delivered it to one O. G. Lund, who, under the rules of the contest was not entitled to receive it. The answer, among other allegations, alleged that at the close of the contest Lund had the highest number of votes at the closing count, and was entitled to receive the prize. The reply was a general denial.

The case was tried before Holt, J., and a jury which returned a verdict in favor of plaintiff for $1,304. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Collins & Eaton,* for appellant.

*Wright & Matchan,* for respondent.

SIMPSON, J.

The defendant publishes at the city of Minneapolis the Daily News, a newspaper of general circulation throughout the northwest. About June 1, 1910, it instituted what it termed a contest, and offered and agreed to give an automobile costing $1,250 to the contestant having, on July 30, 1910, the largest number of votes based upon paid subscriptions for the Daily News. It published, together with this offer, rules governing the contest. So far as here material, these rules provide:

"Ten votes will be allowed for every cent paid in advance on subscriptions to the Daily News. * * * Anyone can take subscriptions * * * and votes will be credited to the contestant for whom they are taken. * * * Votes are not transferable from one contestant to another. * * * During the last week of the contest subscriptions, with remittances for same, must be mailed or deposited in contestant's local bank, to be mailed by the bank officers. * * * Contestants who want the Daily News started to subscribers at once may receive vote ballots for them, which can be counted at any time. A bonus of five thousand votes will be given every contestant entering the contest before June 15, 1910."

The plaintiff, in compliance with the rules governing the same, became a contestant before June 15, 1910, and was thereafter so recognized and treated by the defendant. There were a number of other contestants. Some additional offers or proposals were afterwards made by the defendant. It is not necessary to consider whether these subsequent proposals varied the contract existing between an individual contestant and the defendant, for the votes received thereunder by the plaintiff are not necessary to the determination of the case presented.

The plaintiff, by himself and through friends, thereafter received subscriptions and remitted payments in advance therefor to the defendant company, aggregating $793.10. Of this amount $435.60 was deposited by plaintiff in his local bank on July 30, 1910, the defendant notified thereof, and the amount by the bank officers promptly remitted to the defendant. The other remittances were

made directly to the defendant, and received by it on or before July 30. The form of these remittances was as follows:

"Enclosed find $—— in payment of the following subscriptions. Credit votes to M. Mooney, contestant."

All the money so sent by and to the credit of the plaintiff was received and retained by the defendant in payment of subscriptions for the Daily News. Giving the plaintiff a credit of ten votes for each cent of such subscription money gives to him 793,100 votes, a higher number than that to which any other contestant was entitled. Adding to this number the votes credited by defendant to plaintiff through prizes and special offers makes an aggregate of 1,043,860. One O. J. Lund received 783,900 votes; this being the total number of votes to which he was entitled on account of subscriptions, prizes, and special offers.

The defendant gave Lund the described automobile, disallowing the claim of the plaintiff thereto, and refusing his demand therefor. The plaintiff thereupon brought this action to recover $1,250, the value of the automobile, claiming in substance a breach of a contract between himself and the defendant by the terms of which the defendant agreed to give such automobile to him; he having obtained the highest amount of paid subscriptions, or, as stated in the proposition, the highest number of votes. A trial resulted in a verdict for the plaintiff. The defendant appeals from an order denying its alternative motions for judgment or a new trial.

There is no controversy over the facts above stated. The refusal of the defendant to recognize the plaintiff's claim to the automobile was based on the plaintiff's failure to deliver at the defendant's office, before the close of the contest, certain vote coupons. The defendant company published from time to time during the contest the votes to the credit of the different contestants. Instead of publishing the actual amount to the credit of each contestant, in some cases only a part of the remittance of a contestant, or the vote credit therefor, or the vote credit otherwise obtained, was published in the paper, and for the balance a vote coupon was sent the contestant. This was done in the plaintiff's case without any request by him not to publish the full amount of his credit. Three vote coupons, in

amounts 248,000, 20,000, and 80,000, were so sent to the plaintiff —one July 1 and two July 18. The amounts of these coupons, together with the amounts published in the Daily News, represented the "vote" credit of the plaintiff up to those dates for subscription remittances and under special offers or prizes. Without including a part of the remittances represented by these coupons, the plaintiff would not have a higher credit than the contestant Lund.

The plaintiff deposited these three vote coupons, together with his final subscription remittance July 30 in his local bank. The bank promptly forwarded them by mail to the defendant company, but they were not received at Minneapolis until a day or two after the close of the contest. The defendant considered that these vote coupons were ballots which might be voted by the contestant before the close of the contest, that they took the place of the credit to the contestant for the remittances on account of which they were issued, and that therefore the credit on account of such remittances would be wholly lost to the contestant if the vote coupons were not sent in before the close of the contest. The defendant company refused to credit the plaintiff with any of the votes represented by such coupons, or with the subscription remittances theretofore received by the defendant, included in such coupons.

While not conceding the claim of the defendant as to the nature of these vote coupons, the plaintiff, upon the trial, testified: That on the morning of July 30 he had a telephone conversation with Mr. Burgess, the general manager of the defendant company. That he said to Mr. Burgess: "Now, I have those receipts and account for what I had sent in. Will I leave those with the bank?" That Mr. Burgess, in answer, stated: "Yes; I will guarantee that will be all right." Mr. Burgess testified that no conversation was had with the plaintiff concerning the deposit of any receipts or coupons. The trial court submitted the case to the jury on the theory that, if this conversation did occur, the defendant was bound to recognize and credit to the plaintiff the subscription remittances and votes covered by these vote coupons, but that it was not bound to give such credit unless so notified and consenting to the deposit of the coupons

in the bank. The jury determined that such notification and consent were given.

We have examined all the rules, publications, and correspondence contained in the record bearing thereon, and find nothing that prevented the defendant from making a valid agreement with the plaintiff to credit the votes represented by such coupons without the coupons being returned to its office on or before July 30. There was no error in receiving the testimony of this conversation over the defendant's objection.

We think the case was thus submitted upon a theory more favorable to the defendant than the facts warranted. The defendant received and retained subscription remittances sent to it to be credited to the plaintiff. Under its published rules it agreed to give the plaintiff credit at the specified rate for each such remittance. It had the original subscription orders accompanying the remittances, requesting that such remittances be credited to the plaintiff. We find nothing in the record from which it could be inferred that the plaintiff waived or lost his right to such credits by receiving and retaining vote coupons or in any [other] manner whatever.

The obtaining of subscriptions paid in advance was the substantial benefit received by the defendant in return for the automobile. Obtaining such subscriptions was the substantial service performed by the contestants, including the plaintiff. The plaintiff having obtained subscriptions and remitted payments therefor entitling him to a greater credit than that to which the next highest contestant was entitled, crediting such other contestant with all prize and special offer credits, clearly the plaintiff had fully complied with the conditions of the offer made by the defendant company and became entitled to the compensation under the offer.

The defendant company, after making and publishing the rules governing its so-called contest, was bound thereby as to the contestants who sent subscription remittances in compliance therewith. After a contract was thus made between defendant and the individual contestants, including the plaintiff, the defendant could not change the rights of the contestants thereunder through its misinterpreta-

tion of the rules as published, nor did it have the right to change or give to the rules its own interpretation.

We have considered the various assignments of error relating to the charge of the court and the admission of evidence, and find in them no ground for reversing the action of the trial court.

Affirmed.