## STATE EX REL. C. G. DOSLAND v. MIKE HOLM AND OTHERS.[1]

April 14, 1938.

No. 31,635.

[1]Reported in 279 N. W. 218.

*Henry C. Stiening, Charles A. Lund,* and *Philip R. Monson,* for appellant.

*William S. Ervin,* Attorney General, *David J. Erickson,* Deputy Attorney General, *William D. Gunn,* Special Assistant Attorney General, and *Phillips, Sherwood & Hughes,* for respondents.

JULIUS J. OLSON, JUSTICE.

Relator appeals from a judgment dismissing his petition for a peremptory writ of *mandamus* to compel respondents, members of the state canvassing board, to reconvene and issue to relator a certificate of election to the office of district judge of the seventh judicial district.

There is no dispute respecting the facts, which may be summarized thus: Judge John A. Roeser was and over a period of more than 23 years had been one of the district judges of the seventh

judicial district. His term would normally end on the first Monday in January, 1939. On September 30, 1936, Judge Roeser, pursuant to the provisions of 1 Mason Minn. St. 1927, §§ 210 and 211, as then amended, presented to the governor his petition for retirement. Therein he requested that his retirement, if granted, be not made effective prior to November 15. He stated that there were no general terms of court in session and there were "some matters that the petitioner has to attend to before he finally leaves the office." In conformity with the retirement act, the governor found the facts required thereby and made an order directing the retirement of Judge Roeser to become effective at the close of November 15, 1936. On October 1 the governor appointed Judge Himsl to fill the vacancy to arise upon the retirement of Judge Roeser. The appointment by its terms was made to take effect November 16, 1936. Judge Roeser continued in possession of his office and exercised the duties and functions thereof until and including November 15. Thereafter Judge Himsl assumed the office and has since been acting as such pursuant to his appointment. At the general election for state and other offices held November 3, 1936, 334 votes were cast by the electors of that district for petitioner. The votes consisted principally of printed "stickers" attached to the ballot by the voter, while in other instances there was written upon the ballot the name of petitioner, but as to both there was printed on the sticker or written upon the ballot by the voter the words: "for the office of district judge formerly held by Judge John A. Roeser." By reason of the votes so cast petitioner claims that he was legally elected judge for the six-year term which began on the first Monday in January, 1937. At the election aforesaid and within the 10 counties comprising the seventh judicial district, 107,280 votes were cast and counted. Amongst the offices to be filled in that district was that of district judge to fill a vacancy theretofore caused by the death of Judge Nye. Judge Wilson in December, 1935, had been appointed by the governor to succeed Judge Nye and was a candidate for that office at the 1936 election. His opponent was Mr. Schroeder of Detroit Lakes. Canvass of the votes cast for these men showed Mr. Schroeder to have received 40,650 votes, Judge

Wilson 45,153 votes; and the latter was declared elected. Both men had been duly nominated as candidates, and only their names appeared upon the official ballot as candidates for the office of district judge. There was no space provided for electors to vote for anyone to succeed Judge Roeser. The same situation existed respecting the sample ballot published in the counties composing the district. Petitioner made no attempt to file for the office by petition or otherwise, nor was any application made to have ballots prepared in such fashion as to permit electors to vote generally for the office petitioner now seeks.

The canvassing board met pursuant to law on November 17, 1936, and made the following findings:

"On October 1, 1936, there was filed in the office of the Secretary of State an application by Judge John A. Roeser of the Seventh Judicial District for retirement, to take effect on November 15, 1936.

"It appears from the figures submitted to the Board that C. G. Dosland received 151 votes in Clay County, 4 in Douglas County, 151 in Otter Tail County and 28 in Todd County, making a total of 334 votes received by C. G. Dosland 'for the office of District Judge formerly held by Judge John A. Roeser.'

"After due consideration of all the facts and circumstances surrounding the case, it is the decision of this Board that there was no vacancy in the office of District Judge for the Seventh Judicial District on November 3rd, the date of the General Election, and therefore, that no election to this particular position was had."

It will be noted that in six of the ten counties comprising the district no one voted for the office formerly held by Judge Roeser.

The court was of opinion and so found that "no vacancy existed * * * within 30 days prior to the general election * * * on November 3, 1936," and that "no election was in fact held for said office." In consequence, petitioner was held not entitled to any relief and his petition for a peremptory writ dismissed. Judgment in conformity with the findings was thereupon entered, and this appeal followed.

504

We shall take up the two questions presented by the court's findings in the order therein mentioned: (1) Was there a "vacancy" in the office of district judge of this district more than 30 days prior to the general election held November 3, 1936? (2) If that be determined in the affirmative, was there an election "in fact" for that office?

■ Art. 6, § 10, of our constitution furnishes our guide. It reads:

"In case the *office* of any judge shall become *vacant* before the expiration of the regular term for which he was elected, the *vacancy* shall be filled by appointment by the governor, until a successor is elected and qualified. *And such successor shall be elected at the first annual election that occurs more than thirty days after the vacancy shall have happened.*" (Italics supplied.)

For petitioner it is urged that there was a "vacancy" on October 1, the date when the governor filed the order of retirement. It is said that this document insofar as it sought to defer the effective date "at the close of the 15th day of November, 1936," was void in that it attempted to delay the operative effect of a vacancy already in existence. It is next urged that if there be error in this contention nevertheless the constitutional provision refers to a vacancy in the term as distinguished from a vacancy in the office; hence that the vacancy resulted immediately upon the filing of the order of retirement even if it be conceded that Judge Roeser could continue in the lawful possession of the office until November 15.

The retirement statute does not vest in the office of the chief executive any power of removal or of compulsory retirement. We think there can be no doubt that impeachment is the exclusive constitutional method by which removal may be had. The statute purports to grant only a privilege to the individual judge upon compliance by him with the statutory requirements. He is given certain benefits thereunder if the governor finds the facts set forth in the petition adequate under the law. Obviously it is permissive, not compulsory. It is up to the judge wishing to get the benefits of the act voluntarily to relinquish his office. We can find no logical reason why a judge may not, with the consent of the gov-

ernor, fix an effective date for his retirement. He might have resigned his office to take effect at a future date. If he had done so it is clear that the effect of the resignation would depend upon his intention to relinquish a part of his term and that intention must have been accompanied by an act of relinquishment. State ex rel. Young v. Ladeen, 104 Minn. 252, 255, 116 N. W. 486, 16 L.R.A.(N.S.) 1058; 46 C. J. p. 979 [§ 130](2)(a). In such event the governor would be without power to remove him at any date earlier than the date fixed by the applicant. 46 C. J. p. 979, note 54. The "power to fill does not confer power to declare a vacancy." Throop, Public Officers, p. 422, § 437; "and a vacancy must exist before an election to fill it can be ordered, and an election to fill an anticipated vacancy is not valid unless expressly authorized by the charter or statute." 1 Dillon, Mun. Corp. (5 ed.) p. 721, § 414.

We find no language in the retirement statute which negatives the right to fix a future date of retirement. The nature of the work of a district judge is such that there are nearly always certain matters awaiting decision. He has personal knowledge of such. Public interest in most cases would be best served by giving such retiring judge a reasonable time within which to dispose of pending matters. Were we to construe the statute as contended for by counsel for petitioner we would effectively destroy a practice heretofore universally recognized.

The attempted distinction between a vacancy in the office and a vacancy in the term is, we think, beside the point. The constitutional provision heretofore quoted is that "in case the *office* of any judge shall become vacant * * * . the vacancy shall be filled" by the governor. Here, obviously, there was no vacancy in the office until November 15. At that time the election had been held. Further to be noted is the fact that the constitutional provision relates to *vacancy in office* and not to a *vacancy in the term*.

In State ex rel. Baxter v. Brown, 22 Minn. 482, 484, interpretation of this section was squarely presented to the court. Amongst other things, the court said:

"While the general purpose of the constitution is to make judicial offices elective, this purpose is qualified by the provisions of § 10. As a part of the qualification the last sentence of the section is evidently inserted, in appreciation of the great importance of judicial offices, and of the consequent necessity that the electors, before being called upon to fill them, shall have such time for enquiry and consideration as will enable them to act with reasonable prudence and good sense in the premises. The evil sought to be provided against was, therefore, such as would result from an election occurring too soon after the happening of a vacancy, rather than such as would follow from deferring an election too long."

■ In view of what has been said, it seems hardly necessary to devote much time or space to the question presented in respect of the court's findings that there was "in fact" no election. Were it not for the importance counsel give to this phase of the case this feature might well be eliminated. We conclude, however, to discuss the point briefly.

The facts here appearing are such as must convince any fair-minded person that there was no "election" in fact because, clearly, there was no *choice*. The ballot was an entire blank for judicial office in that district, except to elect a successor to Judge Wilson, himself a candidate for election. Nowhere and in no manner was any effort made to bring before the voters of the district the choice of a successor to Judge Roeser. What the court said in State ex rel. Kleist v. Donald, 164 Wis. 545, 553, 160 N. W. 1067, 1070, correctly states the rule and is decisive of this issue: "(1) Where there is in fact an election at the time and place designated by law, such election is valid although the statutory notice is not given. (2) Where the failure to comply with the law results in a few out of a large number of electors exercising the right to vote at the time and place designated by law, there is no election." And this accords with our views as expressed in the recent case of State ex rel. Wells v. Atwood, 202 Minn. 50, 277 N. W. 357, 358. There relator received only 87 votes out of a total of about a million. Yet he maintained he was "lawfully elected" to the office of railroad

commissioner. Such "interpretation of the statute" as there contended for we said "would be absurd and render our comprehensive election statutes a farce."

As we have seen, at this election more than 107,000 votes were cast and counted in that district. In the four counties where any votes were cast for relator the number so cast was 46,547. His vote therein was only 334, less than one per cent of the whole. In the other six counties, where no votes were cast for him, the total vote was 60,733. Too obvious for further comment, no one can reasonably claim that there was a "choice" on the part of the electors to fill this important office.

Judgment affirmed.

MR. JUSTICE LORING took no part in the consideration or decision of this case, deeming himself disqualified on the ground that he was a member of the state canvassing board when this matter was initially determined; also because he is a party respondent here.

