## J. H. SYLVESTRE AND OTHERS v. STATE AND OTHERS.

214 N. W. 2d 658.

December 14, 1973—Nos. 44224, 44225, 44226, 44227, 44228, 44230.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Chief Deputy Attorney General, and *Thomas R. Muck,* Special Assistant Attorney General, for appellants.

*Erickson, Erie & Odland* and *Leonard A. Erickson,* for respondent Sylvestre.

*Mackall, Crounse & Moore* and *Floyd E. Nelson,* for respondent Flynn.

*Oppenheimer, Wolff, Foster, Shepard & Donnelly* and *Thomas J. Sexton,* for respondent Jaroscak.

*Sullivan, Hanft, Hastings, Fride & O'Brien* and *William P. O'Brien,* for respondent Underhill.

*Louis J. Moriarty* and *Michael J. Mollerus,* for respondent Hall.

*Maslon, Kaplan, Edelman, Borman, Brand & McNulty* and *Irving R. Brand,* for respondent Forbes.

KNUTSON, CHIEF JUSTICE.

These cases, consolidated for trial and consolidated here for review, involve actions brought by District Judges J. H. Sylvestre, Harold E. Flynn, Paul J. Jaroscak, J. K. Underhill, Levi M. Hall, and Arnold C. Forbes, seeking declaratory judgments that Ex. Sess. L. 1967, c. 38, and L. 1969, c. 987, which amended Minn. St. 490.102 regarding judges' retirement, are unconstitutional as applied to them. The cases were submitted on stipulated facts.

Retirement laws for district court judges were comprehensively revised and recoded by L. 1949, c. 640. Since that time they have undergone several changes, but the only ones of significance here are those pertaining to the amount of a judge's retirement compensation.

Prior to the 1967 and 1969 amendments, Minn. St. 1965, § 490.102, subd. 2(a), provided:

"If, at the time of retirement, he [a district judge] has attained the age of at least 70 years and he has served for 15 years as such judge, or as such judge and as judge of a court of record, he shall receive for the remainder of his life, one-half the compensation *allotted to the office.*" (Italics supplied.)

Ex. Sess. L. 1967, c. 38, § 5, amended this provision to read in pertinent part:

"* * * [H]e shall receive for the remainder of his life, one-half of the compensation allotted for the office *at the time of his retirement.*"

This provision was again amended by L. 1969, c. 987, to read:

"* * * [H]e shall receive for the remainder of his life, one-half the compensation allotted to the office *at the time of his retirement or on July 1, 1967, whichever is greater.*" (Italics supplied in part.)

L. 1959, c. 688, § 3, as it relates to retirement of judges of the district court, contains the following provision (Minn. St. 490.102, subd. 1):

"A judge who elects to retire under the provisions of section 490.101 and who has an unexpired balance of the term for which he was elected yet to run after such retirement, shall, in order to receive the retirement compensation hereinafter outlined, waive in writing the compensation allotted to his office, from the date of such retirement to the date of the expiration of the term for which such judge was elected, and receive only during such period and thereafter retirement pay as hereinafter outlined. This subdivision shall not apply to any judge who has retired prior to the effective date of this act."

While the stipulation of facts is more detailed than is necessary for the purposes of this opinion, it may be said in summary that each of the judges involved has served as a judge of the district court for the requisite time to qualify for retirement compensation. Each has retired according to law, and in all cases where there was a balance of the term of the retired judge yet to be served he has filed in writing a waiver of full pay for the balance of such term. In the case of Judges Jaroscak and Underhill, the governor had extended the term pursuant to Minn.

Const. art. 6, § 10, as implemented by Minn. St. 490.101, subd. 4, permitting that to be done so as to avoid the necessity of seeking reelection to reach retirement age. Judge Underhill submitted his resignation to the governor prior to the amendment of Minn. St. 1965, § 490.102, subd. 2(a), but his term was extended so as to permit him to reach retirement age, which occurred after the 1967 amendment took effect.

In 1971, each of the judges was receiving retirement compensation in the amount of $11,000 per annum. The legislature in that year increased the compensation allotted to the office of district judge from $22,000 to $29,000 per annum. Ex. Sess. L. 1971, c. 32, § 12 (Minn. St. 15A.083, subd. 1). Under the pre-1967 formula, the retirement compensation of these judges would have increased to $14,500. Under the 1967 and 1969 formulae they continued to receive $11,000 per annum. Each made a written demand for an increase in compensation based on the fact that they were entitled to one-half the compensation allotted to the office, not one-half the compensation allotted to the office at the time of retirement. In other words, they claim they are entitled to the benefit of the increase in salary. Their demands were refused, and they commenced these actions for a declaratory judgment that the amendment of the statute was unconstitutional as to them on the ground that they had contractual rights which were impaired by the amendments.

The trial court held that Judges Forbes, Sylvestre, Jaroscak, and Hall had contractual rights to retirement benefits based on the statutes as they existed at the time of their retirement and that the amendments of the statute so as to diminish the amount of such compensation were unconstitutional as to them. The court found that Judge Flynn had no such rights since he retired after the enactment of the amendments and therefore there was no impairment of his contractual rights. With respect to Judge Underhill, the court held that he was entitled to the retirement benefits existing at the time he submitted his request for retire-

ment, even though the retirement became effective after the 1967 amendment of the statute was enacted.[1]

Article I, § 10, of the Federal Constitution, and article 1, § 11, of the Minnesota Constitution prohibit the state from passing any law impairing the obligation of contracts.

Art. 6, § 7, of our constitution provides that the compensation of judges "shall not be diminished during their term of office." Prior to the amendment of our judiciary article in 1956, this provision (then art. 6, § 6) read:

"* * * which compensation shall not be diminished during their continuance in office * * *."

Apparently, the state concedes that the language of the pre-1956 constitution and the language of the post-1956 amendment are equivalent. (See, Note 136, p. 50, Appellants' Brief.)

The case of Steiner v. Sullivan, 74 Minn. 498, 77 N. W. 286 (1898), dealt with the right of the legislature to require Ramsey County to pay its district judges additional compensation. In upholding the right, we said (74 Minn. 504, 77 N. W. 287):

"It is conceded that this section [art. 6, § 6, pre-1956 constitution] does not prohibit the increase of the salaries of the judges during their continuance in office. The prohibition to the effect that the judges shall receive no other fee or reward than the stated compensation prescribed by the legislature was intended to prevent the charging of fees to litigants for the benefit of the judges, and the payment to them of special compensation for particular or extra services. But it is not a limitation on the power of the legislature to prescribe, from time to time, the amount of such stated compensation (*except that it cannot reduce the stated compensation of a judge during his continuance in office*), or to provide for the manner of its payment, as it deems just and equal." (Italics supplied.)

The state relies for the most part on the cases of Gibbs v. Minneapolis Fire Dept. Relief Assn. 125 Minn. 174, 145 N. W. 1075

---

[1] See, State ex rel. Dosland v. Holm, 202 Minn. 500, 279 N. W. 218 (1938).

(1914) ; Hessian v. Ervin, 204 Minn. 287, 283 N. W. 404 (1939) ; Johnson v. State Employees' Retirement Assn. 208 Minn. 111, 292 N. W. 767 (1940) ; Halek v. City of St. Paul, 227 Minn. 477, 35 N. W. 2d 705 (1949) ; and Slezak v. Ousdigian, 260 Minn. 303, 110 N. W. 2d 1 (1961). None of these cases involved retirement compensation for judges.

In the case of Starkweather v. Blair, 245 Minn. 371, 390, 71 N. W. 2d 869, 881 (1955), we said:

"It seems well established by our own decisions that, *unless otherwise proscribed by the constitution,* the power to create an office includes the power to destroy it or abolish it, and also to diminish the compensation for the office at the will of the legislature. Whatever may be the law in other states, it is firmly established in this state that a state employee, even though under civil service, has no vested right to his position." (Italics supplied.)

Again, in Slezak v. Ousdigian, 260 Minn. 303, 309, 110 N. W. 2d 1, 6 (1961), we said:

"It is firmly established in this state that a state employee even though under civil service has no vested right to his position."

The position of judge of the district court is not created by the legislature, but derives from the Constitution of the State of Minnesota. The legislature may not abolish the position nor, under the present statutes, remove a judge from office except by impeachment.

By L. 1971, c. 909, the Commission on Judicial Standards was established and under the provisions of that act, which is now applicable to district judges by virtue of the amendment of art. 6, § 10, of our constitution in 1972, a judge may be removed by the supreme court for cause. Prior to that time the only way a judge could be removed was by impeachment. In State ex rel. Dosland y. Holm, 202 Minn. 500, 504, 279 N. W. 218, 220 (1938), we said:

"The retirement statute does not vest in the office of the chief

executive any power of removal or of compulsory retirement. We think there can be no doubt that impeachment is the exclusive constitutional method by which removal may be had. * * * We can find no logical reason why a judge may not, with the consent of the governor, fix an effective date for his retirement. He might have resigned his office to take effect at a future date. If he had done so it is clear that the effect of the resignation would depend upon his intention to relinquish a part of his term and that intention must have been accompanied by an act of relinquishment. * * * In such event the governor would be without power to remove him at any date earlier than the date fixed by the applicant. 46 C. J. p. 979, note 54. The 'power to fill does not confer power to declare a vacancy.' Throop, Public Officers, p. 422, § 437; 'and a vacancy must exist before an election to fill it can be ordered, and an election to fill an anticipated vacancy is not valid unless expressly authorized by the charter or statute.' "

The above language applies to the case of Judge Underhill. While he submitted his request for retirement prior to the 1967 amendment of Minn. St. 1965, § 490.102, subd. 2(a), he was granted an extension until he reached retirement age pursuant to the provisions of art. 6, § 10, of our constitution as implemented by Minn. St. 490.101. The effective date of his retirement did not take place until he actually retired, which would place him in the same position as Judge Flynn.

At the outset, it should be kept in mind that in order to be a district judge a person must under our constitution be "learned in the law." Minn. Const. art. 6, § 7. That term means that in order to hold a judicial position a person must be admitted to practice law and in good standing. In re Candidacy of Daly, 294 Minn. 351, 200 N. W. 2d 913 (1972), certiorari denied, 409 U. S. 1041, 93 S. Ct. 528, 34 L. ed. 2d 491 (1972).

In order to assume the position of judge of district court, either by election or by appointment, a person must give up the right to practice law, often at a financial sacrifice. The state has an interest in inducing such a person to make a life career of the

position. With that in mind, the legislature has provided that if a judge remains in office for the prescribed number of years and will voluntarily retire, he will be paid a part of his salary for the remainder of his life.

In order to place the questions involved here in their proper perspective, it is proper to refer to the history of the constitutional provisions setting up an independent judiciary and setting salaries and retirement compensation for judges. Looking first at the Federal system, we find that the entire operation of our Federal government is based on the separation of powers among the executive, judicial, and legislative branches. The founders of our Federal system were careful to make the judiciary independent of the other branches of government. The only control given the legislative or executive branch of government was the determination of the amount of salary the judges should be paid. They were all to be appointed for life and were to draw their salary for life after service for the prescribed years, with the provision that their salaries could not be diminished during their continuance in office. U. S. Const. art. III, § 1.

The state did not go quite as far as the founders of our Federal system, but in looking at our Minnesota Constitution it is obvious that the same purpose was contemplated by providing that compensation of judges could not be diminished during their continuance in office. Minn. Const. art. 6, § 7. The legislature, by providing retirement compensation if the judge remains in office the prescribed period of time and then retires, surely intended to encourage a judge to remain in his position as long as he is performing his work in such a manner that the people are willing to reelect him. Quite often the attraction that induces a judge to stay on the bench is the assurance by the state that if he remains during the required number of years and attains a certain age he will receive, upon voluntary retirement, a portion of the salary allotted to the office for the remainder of his life.

Our constitution now provides that the number and boundaries

of judicial districts shall be established or changed in the manner provided by law, adding—

"* * * but the office of a district judge may not be abolished during his term. There shall be two or more district judges in each district. Each judge of the district court in any district shall be a resident of such district at the time of his selection and during his continuance in office." Minn. Const. art. 6, § 3.

Thus it is that the control of the legislature over the judges of the district court is limited by this constitutional provision and, except in so far as they can establish the financial rewards of a judge, which may not be diminished during his continuance in office, it was intended that the judiciary be independent of the legislature. The people by their vote may terminate the tenure of a judge, but unless he voluntarily chooses to retire he may remain in office indefinitely so long as the people of his district continue to elect him.

Respondents' position is that the state's offer to provide retirement compensation if the judge complies with all the provisions of the statute gives rise to a contract which may not be impaired under Minn. Const. art. 1, § 11, and U. S. Const. art. I, § 10. The right of a state to enter into a contract was recognized in Indiana ex rel. Anderson v. Brand, 303 U. S. 95, 58 S. Ct. 443, 82 L. ed. 685 (1938), which involved a teacher's contract under a teachers' tenure law. There the court said (303 U. S. 100, 58 S. Ct. 446, 82 L. ed. 690):

"* * * The principal function of a legislative body is not to make contracts but to make laws which declare the policy of the state and are subject to repeal when a subsequent legislature shall determine to alter that policy. Nevertheless, it is established that a legislative enactment may contain provisions which, when accepted as the basis of action by individuals, become contracts between them and the State or its subdivisions within the protection of Art. I, § 10. If the people's representatives deem it in the public interest they may adopt a policy of contracting in respect

of public business for a term longer than the life of the current session of the legislature."

The case of O'Malley v. Woodrough, 307 U. S. 277, 59 S. Ct. 838, 83 L. ed. 1289 (1939), involved a challenge to a Federal income tax on the salary of a Federal circuit judge based on the claim that imposing the tax would reduce the compensation of a judge during his term of office. While the court held that Congress could properly subject judges to such a tax, Mr. Justice Butler; in a dissent, quoted Mr. Justice Story and Chancellor Kent as follows (307 U. S. 286, 59 S. Ct. 841, 83 L. ed. 1296) :

"* * * 'Without this provision [prohibiting diminution of the compensation of a judge during his continuance in office], the other, as to the tenure of office, would have been utterly nugatory, and indeed a mere mockery * * *' 2 Story, § 1628. Chancellor Kent said: 'The provision for the permanent support of the judges is well calculated, in addition to the tenure of their office, to give them the requisite independence. It tends, also, to secure a succession of learned men on the bench, who, in consequence of a certain undiminished support, are enabled and induced to quit the lucrative pursuits of private business for the duties of that important station. The Constitution of the United States, on this subject, was an improvement upon all our previously existing constitutions.' 1 Kent Com. 294."

While cases involving private employment are not controlling, we think the rationale of the case of Hartung v. Billmeier, 243 Minn. 148, 66 N. W. 2d 784 (1954), is persuasive. That case involved a promise by an employer to give his employees a stated bonus if they stayed with him 5 years. The employee stayed with the employer for 6 years and 9 months. When the employer thereafter sued him for the price of goods sold to him, the employee counterclaimed to collect the bonus which had been promised to him. In upholding his right to recover, we said (243 Minn. 153, 66 N. W. 2d 789) :

"* * * Inasmuch as plaintiff's offer or promise to pay a

bonus was not accepted by a promise of the defendant to work continuously for him for five years, no bilateral contract resulted when the offer was made.

"'* * * A bilateral contract is one in which there are mutual promises between two parties to the contract; each party being both a promisor and a promisee.' Restatement, Contracts, § 12.

"A promisee may, however, accept an offer or promise to pay a bonus by performing the act or forbearance specified in the offer, but such act or forbearance must differ from what the promisee is already obligated to do either by law or by existing contract. When a promise is thus accepted by performance of the designated act or forbearance, the promisor's offer is converted into a unilateral contract which comes into being the moment the act or forbearance has been fully performed.

"Here the defendant accepted plaintiff's offer by forbearing to leave plaintiff's employment for five years. The moment plaintiff's offer was thus converted into a contract, the bonus became due and payable."

The same is true of the cases now before us. When these judges entered upon their judicial position, the state in effect said to them, "If you will stay on the job for at least 15 years and then retire after having reached the specified retirement age, we will pay you a part of your salary for the remainder of your life." Up to 1967, the law provided that they would be paid, upon retirement, one-half of the salary allotted to the office. By Ex. Sess. L. 1967, c. 38, § 5, this provision was altered to read that a judge should be paid one-half the compensation allotted to the office at the time of his retirement, and by L. 1969, c. 987, to provide that he should be paid one-half the compensation allotted to the office at the time of his retirement or on July 1, 1967, whichever is greater.

In Hickey v. Pittsburgh Pension Board, 378 Pa. 300, 310, 106 A. 2d 233, 238, 52 A. L. R. 2d 430, 436 (1954), the Pennsylvania Supreme Court said:

"* * * Whether it be in the field of sports or in halls of the

legislature it is not consonant with American traditions of fairness and justice to change the ground rules in the middle of the game." [2]

The subject of "[v]ested right of pensioner to pension" is exhaustively annotated in 52 A. L. R. 2d 437, and it would serve no useful purpose to try to reconcile the numerous cases that have arisen involving this subject in the several jurisdictions of this country. It might be sufficient to say that there appears to be a difference of opinion as to whether there is a "vested" right to a pension depending on whether contributions are made by the pensioner or not.[3] We think this difference is insignificant in so far as the right of a judge to retirement compensation is concerned for the reason that, strictly speaking, what he

---

[2] We quoted the above in a footnote in Gardner v. County of Itasca, 280 Minn. 51, 157 N. W. 2d 753 (1968), which involved the right of a probate judge to collect his retirement pay and also what was due him from Public Employees Retirement Association.

[3] Since July 1, 1961, all of the judges affected have been compelled to pay 4 percent of their salary into a special account to provide benefits to surviving widows of judges, which the trial court found was part of the judges' retirement system. This amount was deducted from the salaries of judges regardless of whether they were married or single. In the event a judge died without a surviving widow, his estate was not entitled to the return of the moneys paid from his salary into the special survivors' account. Standing alone, this requirement that each judge, regardless of his marital status, pay 4 percent of his salary to provide benefits to widows of judges might make the judges' retirement system a contributory plan, even though it cannot be said that the judges benefit thereby as the fund is solely for the surviving widows. On the other hand, many retirement plans do contain provisions for surviving widows. However, retirement compensation constitutes deferred payment of part of the judge's salary and certainly that is the equivalent of a contributory plan. Although the judges' retirement system can be equated with a contributory plan, it is not necessary to do so under the rationale of this decision and there is no point in further discussing this item. (Note: The term "surviving widow" has been used rather than "surviving spouse" because that is the way Minn. St. 490.102 reads.)

receives is not a pension in the sense that word historically had when a pension was considered to be a manifestation of sovereign generosity. See, Hickey v. Pittsburgh Pension Board, *supra.*

Here, a judge gives up the right to continue in the only field of endeavor in which he has been educated and is experienced in order to accept a position, often for a much smaller financial reward, anticipating that upon retirement the state will continue to pay him part of his salary. Inflation affects retired judges the same as it does anyone else; and a judge's reliance upon the state's offer to pay, upon his retirement, a part of the salary allotted to his office surely is one of the significant considerations that induces the judge to remain in office during the required period of time and until the age permitting retirement. Frequently, his retirement compensation is the only resource he has to rely upon when he has reached an age where it is too late to actively engage in any other financial activity.

Each of the stipulations of fact upon which the decisions of the trial court are based states that if the individual judge were called as a witness he would testify that the retirement compensation provisions in the Minnesota statutes, as they existed from time to time, were important inducements to him and were relied upon by him in seeking election as district judge, in seeking reelection, and in continuing to serve in that office. Based on such stipulations, the lower court found that the retirement provisions constituted valuable consideration for each judge's running for election and reelection to the office and for his continuing to serve as a district judge until the date of his retirement. The stipulations and the court's finding based thereon are not challenged by the state.

The question, then, is whether the 1967 and 1969 amendments which changed the language of § 490.102, subd. 2(a), so as to provide that a judge upon retirement should receive the compensation allotted to the office at the time of retirement, or on July 1, 1967, rather than the compensation allotted to the office, constitute an impairment of a contract. Surely, if there is a con-

tract, taking away the right to receive compensation based o'n the increased salary of judges without any compensating benefits constitutes an impairment of the contract. Prior to 1966, judges who had retired received the benefit of any increase in judicial salaries. Since the 1967 amendment they do not, if the amendments are held to be valid. Inasmuch as we hold that retirement pay constitutes deferred compensation, which cannot be diminished during the continuance in office of a judge, and the Constitution prohibits the passage of a law that impairs the rights of a contract after it becomes enforceable, this cannot be done.

As to Judge Flynn, the trial court held that he could receive only the retirement compensation provided at the time of his retirement. Carried to its logical conclusion, this would mean that the legislature could diminish or abolish a judge's retirement compensation at any time until he actually retires. We are convinced that the retirement provisions cannot constitutionally be so construed. The better rule is that retirement compensation constitutes deferred payment of part of the judge's salary, if he is willing to retire, which cannot be diminished during his continuance in office; and upon his retirement the contract is fully performed. He is then entitled to be paid what the state promised him when he took office, which is one-half the compensation allotted to the office then and at any time thereafter. Any other construction would impair the independence of the judiciary as a separate, coequal branch of government under our concept of a separation of powers among the three branches of government. Retirement pay of a judge, so long as he is performing his part of the contract, is as much protected by the constitutional proscription against reduction as the compensation which he actually receives while in service. It is only on that theory that assurance can be given a judge that, if he stays in the office for the required length of time, attains the required age, and then retires, he will receive retirement compensation as promised him when he took office. On this theory, Judge Flynn is entitled to

the same protection as the other judges involved; that is, he is entitled to receive one-half of the pay allotted to the office, which was the promise made by the state when he took office and remained so throughout his continuance in office.

We think the same reasoning applies to Judge Underhill. While the trial court found he was entitled to the retirement pay allotted to the office, in order to leave no doubt about his position, we hold that, even though his retirement took effect after the 1967 amendment was enacted, the promise to pay one-half the salary allotted to the office was made at the time when he took office and is unaffected by the amendments.

While Hartung v. Billmeier, *supra,* presented only the issue of acceptance by full performance, the court in Hartung explicitly left open the question of the effect of part performance with this reservation (243 Minn. 153, note 7, 66 N. W. 2d 789, note 6):

"Query: What remedy has offeree when offeror revokes offer for unilateral contract after partial performance by the offeree? See, Mooney v. Daily News Co. 116 Minn. 212, 133 N. W. 573, 37 L. R. A. (N. S.) 183; La Du-King Mfg. Co v. La Du, 36 Minn. 473, 31 N. W. 938; 12 Am. Jur, Contracts, § 34."

Mooney v. Daily News Co. 116 Minn. 212, 133 N. W. 573, 37 L. R. A. (N. S.) 183, cited in the above footnote, has been cited in 12 Am. Jur. 2d, Contracts, § 37, for the proposition that partial performance of the act requested by an offer for unilateral contract may render the offer binding to a certain extent.

Judges Flynn and Underhill are essentially in the position of offerees who, after partial performance, found that the offer made to them was revoked and a new offer attempted to be substituted. While the problem of the revocability of offers for unilateral contracts after part performance has not been decisively treated by this court before and is not without theoretical difficulties, see 1 Williston, Contracts (3 ed.) §§ 60 and 60A, we believe the better view is that adopted by the Restatement. Under

the Restatement view, part performance by the offeree prevents the revocation of the offer (Restatement, Contracts, § 45):

"If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being given or tendered within the time stated in the offer." [4]

A change in the terms of the offer which reduces the terms of the original offer is, of course, tantamount to a revocation of the offer and the substitution of a new offer.

Thus, following the analogy to private employment cases, once Judges Flynn and Underhill began their service as judges, the state was bound by a contract to pay "one-half the compensation alotted to the office" in retirement benefits, although of course the state's duty of immediate performance did not arise until the judge's completion of the requisite years of service. Since under the principle advanced by the Restatement the state was irrevocably bound by this contract from the time Judges Flynn and

---

[4] Under Restatement, Contracts 2d, Tentative Draft, § 45, the same principle is retained although beginning performance is said to create an option contract:

"(1) Where an offer invites an offeree to accept by rendering a performance and does not invite a promissory acceptance, an option contract is created when the offeree tenders or begins the invited performance or tenders a beginning of it."

An option contract is of course irrevocable. The following illustration given by the Restatement seems particularly appropriate to the present case:

"In January A, an employer, publishes a notice to his employees, promising a stated Christmas bonus to any employee who is continuously in A's employ from January to Christmas. B, an employee hired by the week, reads the notice and continues at work beyond the expiration of the current week. A is bound by an option contract, and if B is continuously in A's employ until Christmas a notice of revocation of the bonus is ineffective." Restatement, Contracts 2d, Tentative Draft, § 45, illustration 8.

Underhill took office, there is no reason for treating their situation differently from that of the other judges.

Affirmed as to plaintiffs Sylvestre, Jaroscak, Underhill, Hall, and Forbes; modified as to plaintiff Flynn.