ANTOINE L. JOSEPH, Plaintiff

v.

BERNARD E. ROEBUCK and the GOVERNMENT OF THE
VIRGIN ISLANDS, Defendants

and

CHIEF JUDGE VERNE A. HODGE, JUDGE RAYMOND L.
FINCH, JUDGE EILEEN R. PETERSEN, HENRY L.
FEUERZEIG and IRWIN J. SILVERLIGHT,
Intervenors

Civil No. 1987/135

District Court of the Virgin Islands

Div. of St. Croix

November 3, 1987

JOEL H. HOLT, ESQ. (LAW OFFICES OF JOEL HOLT), St. Croix, V.I. *for plaintiff*

GODFREY R. DE CASTRO, ESQ., Attorney General, and NORMAN P. JONES, ESQ., Assistant Attorney General, St. Croix, V.I., *for defendants*

ALBERT A. SHEEN, ESQ., St. Croix, V.I., *for intervenors Judges Hodge, Finch and Petersen*

DUDLEY, TOPPER & FEUERZEIG, St. Thomas, V.I., *for intervenor Feuerzeig*

SCOTT SILVERLIGHT, ESQ. (NICHOLS, NEWMAN & SILVERLIGHT), St. Croix, V.I., *for intervenor Silverlight*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

This case exemplifies the difficulties caused by hastily drafted legislation. Our task is to determine the meaning of "current salary" in the Judges Pension Fund Act. For the following reasons we hold that "current salary" means the same salary as that of active judges of the Territorial Court of the Virgin Islands as it may escalate from time to time.

## I. BACKGROUND AND FACTS

This instant case evolves from Joseph v. Government of the Virgin Islands, 576 F. Supp. 1335 (D.V.I. 2984) ("Joseph I"), wherein Antoine Joseph, a retired judge of the Territorial Court of the Virgin Islands, sought a declaration of his pension rights under the Judges Pension Fund Act, 13 V.I.C. § 741(a).[1] We held that Joseph and those judges who were serving as territorial court judges at the time that the Judges Pension Fund went into effect, were contractually entitled to the benefits bestowed by the Act, even though the Act was repealed 29 days after it became effective. Id. at 1341.

---

[1] Former 3 V.I.C. § 741 provided:

　　(a) Notwithstanding any other provision of law, every judge of the Territorial Court or the Municipal Court of the Virgin Islands shall, after completion of his term or terms of office, be entitled to a pension commencing upon the latest of the following events:

We then enumerated certain steps to be taken to provide for implementation of the Act as it applied to those judges then serving. Specifically, the Commissioner of Finance, as administrator of the fund, was mandated to calculate Joseph's pension according to the

---

 (1) Upon his fiftieth birthday; or

 (2) Upon completion of his term or terms of office as judge; or

 (3) Upon the date of enactment of this section.

The aforesaid pension shall be payable during his lifetime in equal bi-weekly installments and shall be computed and paid as follows:

 A. For six but fewer than twelve years in office, 55% of the current salary for judges of the Territorial Court.

 B. For twelve but fewer than twenty years in office, 66 $2/3$% of the current salary of judges of the Territorial Court.

 C. For twenty or more years in office, 100% of the current salary of judges of the Territorial Court.

 (b) The term "Judge" as used in this section means any individual who shall hold the office of the judge of the Territorial Court or the Municipal Court of the Virgin Islands on or after December 1, 1976.

 (c) Commencing on the effective date of this section, the provisions of Title 3, chapter 27, Virgin Islands Code, relating to Retirement of Personnel, shall not be applicable to judges, as defined in subsection (b) of this section. In lieu of contributions to the Retirement System created by Title 3, chapter 27, Virgin Islands Code, judges shall during their terms of office pay 8 per centum of their annual compensation into the Judges Pension Fund created by subsection (e) of this section. The payment of a pension to a judge pursuant to the provisions of this section shall be in lieu of the payment of any pension to him by the Retirement System or the refund of any contributions made by him to the Retirement System prior to the date of enactment of this section. Provided, however, that nothing in this section shall affect any rights under Title 3, chapter 27, Virgin Islands Code, of any person who was a judge of the Municipal Court prior to but not on or after December 1, 1976.

 (d) The pension prescribed herein shall not be paid for any period during which such former judge holds an appointive or elective office or position in or under the Federal Government or the Government of the Virgin Islands, to which office or position is attached a rate of pay other than a nominal rate.

 (e) There is hereby established the "Judges Pension Fund," a special account to be administered by the Commissioner of Finance, to which is appropriated from the General Fund sufficient monies for the payment of Judges pensions, and from which the Commissioner of Finance shall expend monies solely for judges' pensions and related administrative expenses.

 (f) A former judge may elect at the time of retirement, in lieu of the full retirement benefit provided by this section, a lesser amount thereof with the proviso that upon death of the former judge a designated beneficiary shall receive a benefit under one of the following two options, computed on an actuarial equivalent basis, as may be selected by the former judge:

 Option 1. Upon death of the former judge, his reduced retirement benefit shall be continued at the same amount throughout the life of and paid to such

provisions of the Act, and to make such pension payments to Joseph as calculated. 576 F. Supp. at 1341–42. He was also directed to take the necessary steps to implement the system vis-a-vis the nonretired judges. Id.

At the time of our 1983 decision in Joseph I, Joseph had recently retired after three years as counsel to the Virgin Islands legislature. He had left the bench in 1980 after 15 years of service.[2] When the Finance Department began paying Joseph his pension, it did so based on two-thirds of the $57,200 salary earned by territorial court judges in 1983, and not the $45,000 salary earned by such judges in 1980 when Joseph left the bench.[3]

The government continued to pay Joseph's benefits based upon the $57,200 salary until Bernard Roebuck, certifying officer of the Department of Finance, notified Joseph by letter dated May 14, 1987, that Joseph's pension was being unilaterally reduced. (Joseph exh. A.) Roebuck stated that the basis for this decision was an April 14, 1987, opinion of the Attorney General of the Virgin Islands that Joseph's pension ought to be calculated based upon two-thirds of the $45,000 salary he earned when he left the bench in 1980. (Joseph exh. B.)[4]

Joseph, of course, disagreed. He filed this action for declaratory relief and moved for summary judgment. His argument is simply that his benefits ought to be caculated based upon the present

---

person having an insurable interest in his life as he shall nominate in a written designation duly acknowledged and filed with the Commissioner of Finance.

Option 2. Upon his death, one-half of the reduced retirement benefit shall be continued throughout the life of such nominee having an insurable interest in the life of the former judge as named in a written designation filed with the Commissioner of Finance at the time of his retirement.

This section was repealed Jan. 28, 1977, No. 3929, Sess. L. 1977, p. 3.

[2] Pursuant to subsection (d), Joseph was ineligible to receive his benefits upon leaving the bench so long as he remained in government employ. 3 V.I.C. § 741(d).

[3] The act provided that the benefits of a judge with twelve to twenty years of service would be calculated based upon "two-thirds" of the current salary of judges of the Territorial Court. See supra at n.1.

[4] The Attorney General of the Virgin Islands wrote:

It would be unreasonable to conclude that the Legislature intended that a retirement annuity could be increased after an individual has left office and his contributions to the system have ceased.

315

salary of the territorial court judges as it may escalate from time to time.[5]

The government opposes and cross-moves for summary judgment. It argues that Joseph's salary ought to be calculated based upon that salary which he earned when he left the bench. It also contends that it is entitled to judgment as to Joseph in the amount which represents the difference between what it asserts Joseph is entitled to receive, $1,153.83 biweekly, and $1,466.67 which is the biweekly amount Joseph has received since 1983.[6]

## II. DISCUSSION

 To resolve this conflict we must construe the statutory language so as to give effect to the intent of the Virgin Islands legislature. Marsh v. Government of the Virgin Islands, 431 F. Supp. 800, 802 (D.V.I. 1977).[7] Heyl & Patterson Intern. v. F.D. Rich Housing, 633 F.2d 419, 431 (3d Cir. 1981). We are not to be guided by a single sentence, but rather we view the entire statute as to its "objects and policy." 431 F. Supp. at 803 (quoting, Philbrook v. Glodgett, 421 U.S. 707, 713 (1975)). We are required to give it a sensible construction. Government of the Virgin Islands v. Berry, 604 F.2d 221, 225 (3d Cir. 1979) (quotation omitted).

At issue here is the following language of the statute:

> [T]he aforesaid pension shall be payable during his lifetime in equal bi-weekly installments and shall be compiled and paid as follows:
>
> . . .
>
> B. For twelve but fewer than twenty years in office, 66 2/3% of the current salary of judges of the Territorial Court.
>
> . . .

See, supra note 1.

---

[5] Because the following applicants have interests recognized by our decision in Joseph I, we granted them leave to intervene: Territorial Court Presiding Judge Verne A. Hodge, Judge Raymond L. Finch, Judge Eileen Petersen, and former judges Henry L. Feuerzeig and Irwin J. Silverlight ("judges"). They, of course, take the same position as Joseph on the meaning of "current salary".

[6] In Joseph I, we never had occasion to reach the issue before us today. 576 F. Supp. at 1335–41.

[7] The Marsh opinion was authored by Circuit Judge Garth sitting as a judge of this Court by designation pursuant to 48 U.S.C. § 1614(a). 431 F. Supp. at 801 n.1.

We note that the statute does not define the meaning of "current salary". This is troubling because when it is used as an adjective, the term "current" can have many different meanings which normally turns on the word which it modifies or the subject matter with which it is associated. Warren Co. v. Commissioner of Internal Revenue, 135 F.2d 679, 685 (5th Cir. 1943). Graham v. Miller, 137 F.2d 507, 509 (3d Cir. 1943).

In the instant case, the word "current" modifies the word "salary" which is also the subject matter of the dispute. This is not helpful because the ambiguity is in the entire phrase "current salary".

Normally, therefore, we would define this specific phrase with reference to how the clause is used in connection with the whole statute. Marsh, 431 F. Supp. at 805 (quoting Kokoszka v. Belford, 417 U.S. 642, 650 (1974)). However, the statute at issue is ambiguous throughout.

■ Of course, we presume that legislative intent is expressed by the ordinary common sense meaning of the words used. Territorial Court of the Virgin Islands v. Richards, 673 F. Supp. 152, Civ. No. 1987/24, 1987 St. Thomas Supp. —— (D.V.I. October 21, 1987) (citations omitted). But once again resort to this aid is of little help. See Black's Law Dictionary, 805 (5th Ed.) (1971). See also Webster's Third New International Dictionary, 557 (1966).

The respective parties have recognized the poor draftsmanship of this statute. They have attempted to suggest the meaning of the phrase by reference to cases from other jurisdictions interpreting similar provisions. For example, Joseph and the other judges have referred us to a line of cases out of Michigan and Minnesota. See Murphy v. State, 418 Mich. 341, 343 N.W.2d 177 (Mich. 1984); Sylvester v. State, 214 N.W.2d 658 (Minn. 1973); Campbell v. Michigan Judges Retirement Board, 378 Mich. 169, 143 N.W.2d 755 (Mich. 1966).

In both Murphy and Campbell at issue was a statute that called for pension payments in amounts equal to one-half of the salary currently being paid to circuit judges. Campbell, 143 N.W.2d at 756. Both the Murphy and Campbell courts referred to that language as an escalator clause in that the pension would increase as the current salary of circuit judges increased. Murphy, 343 N.W.2d at 180.

The Sylvester matter dealt with a statute which required the benefits to be one-half of the pay allotted to the office. Sylvester, 214 N.W.2d at 668. That statute was also interpreted to imply an

escalation in the benefits as the salary of the allotted office increased. Id. at 666.

The judges also refer us to Kozak v. Ret. Bd. of Fireman's Ann. & Ben. Fund, 95 Ill. 2d 211, 69 Ill. Dec. 177, 447 N.E.2d 394 (Ill. 1983). There the Illinois Supreme Court was called upon to interpret a statute which defined an annuity of the widow of a fireman as "an amount equal to 50% of the current annual salary attached to the classified position to which the fireman was certified at the time of his death." Id. at 395 (quotation omitted). The Kozak court emphasized the modification of the term "salary" with "current" as suggestive of a distinction between other decisions where the pension was held to be fixed. Id. at 398. It held that the pension would escalate with that of the salary of present firemen. Indeed, it found there to be no ambiguity in this regard. Id. at 399.

The government has not cited any competent authority contrary to the judges' position. It adopts the reasoning of the dissent in Kozak, that treating the phrase "current salary" as an escalator clause might often result in retirees receiving benefits greater than their salaries when on active service. It adds that the legislature could not have intended that a judge's benefits would increase when his or her payments into the system had ceased.

We note, however, that the plan called for an 8% contribution from the judges. Obviously, the contributions would increase as the judge's salary increased. The legislature clearly anticipated that the operating fund of the pension, that is, the outgoing payment of benefits to retired judges, would be supplemented by the contributions presently being paid in by successive active judges, which, of course, would also be increasing. Moreover, a review of subsection (e) of the statute reveals that the Commissioner of Finance was to administer this Judges Pension Fund with appropriations from the General Fund. See supra, note 1. Thus, it is also clear that the Judges Pension Fund was not expected to operate solely out of the judges' payments.

■ More importantly, as we noted in Joseph I, the benefits represent compensation rather than a gratuity. 576 F. Supp. 1339. Such benefits are also to be liberally construed in favor of those intended to be benefited. Kozak, 447 N.E.2d at 397 (quotation omitted); Swift v. State, 342 So. 2d 191, 196 (La. 1977); Terry v. City of Berkeley, 263 P.2d 833, 835 (Cal. 1953). It is not so implausible that the legislature intended the benefits of the retiree to increase to counter inflation. Indeed, when one considers the

reduced compensation a judge receives vis-a-vis what he or she might earn in private practice, there is no anomaly in suggesting that a retiree might receive such substantial benefits. It is common knowledge that it is difficult to attract men and women to serve on the bench given the salary structure for judges. The legislature could have intended that by providing for escalating retirement benefits, it would aid in the endeavor to attract and keep such judges by making their futures secure. In fact, we wrote in Joseph I:

> [t]he intent of the Legislature in preventing diminution of a judge's total compensation, rather than a salary alone, is easy to divine. This took place at the time of enhancement of the dignity and prestige of the judicial branch of the territorial government, and an expansion of its potential jurisdiction. The concept of judicial independence, i.e., the desire that a judge be free of extraneous influences in decision-making, is ingrained in our judicial system. If, while unable to diminish his or her salary because of the statute, a Legislature could, in any event, diminish the right to a pension or retirement benefits, the effect would be the same. A judge in most instances has accepted that appointment at a total income level lower than he or she was earning as an attorney. Not only is the salary level important to the judge, but the right to a retirement benefit is equally important . . . .

576 F. Supp. at 1339.

Even if this is unpersuasive, the language of the statute itself somewhat suggests an escalating intent. It reads: ". . . current salary of *judges* of the Territorial Court." (Emphasis added.) Reference to judges of the territorial court, and not solely to the retired judge indicates that the pensionee's benefits were tied to the office and not to that specific judge's compensation. The government's interpretation would have been better stated as "current salary of that judge". In fact, the judges refer us to an example of a statute where the legislature's intent was made clear by language such as "salary at the time of retirement". See Campbell, 143 N.W.2d at 756 (act was amended to eliminate the escalator clause by providing that the pension payment would be the amount of one-half of the salary . . . [of] . . . the judge at the time of his retirement). If the legislature intended the meaning that the government suggests, it ought to have used such language.

319

Indeed, in the Senators Pension Fund Act, which was enacted along with the Judges Pension Fund Act, the legislature did use such limiting language. It provided that the senator's pension was to be calculated based upon a percentage of his or her "highest annual salary as senator". 3 V.I.C. § 743(a)(3), repealed Jan. 28, 1977, No. 3929, Sess. L. 1977, p. 3. This suggests to us that the legislature knew how to express a limiting intent where it so desired. We believe, therefore, that failure to do so in the statute at issue evidences that it did not have such intent vis-a-vis the judges and the pension benefits for governors. See 3 V.I.C. § 742(A)(3), repealed Jan. 28, 1977, No. 3929, Sess. L. 1977, p. 3.

██ We are influenced by the axiom that pension benefits are to be construed in favor of the beneficiary where there is ambiguity. The government provides us with nothing which suggests the legislature's intent was as it now asserts. Moreover, we find the attorney general's unsupported conclusions, without merit. We, therefore, hold that a retired judge's benefits shall be calculated based upon the salary which territorial court judges are being paid at the time the benefit payment is being calculated.[8] In short, Joseph's benefits ought to escalate with that of the salary of the office.

### III. CONCLUSION

Although this statute evidences little legislative intent, for the foregoing reasons we hold in favor of Joseph and the other judges. Summary judgment is appropriate because no facts are in dispute. Fed. R. Civ. P. 56. The government's counterclaim will be dismissed.

### SUMMARY JUDGMENT

THESE MATTERS are before the Court on cross-motions for summary judgment. Having filed a memorandum opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

THAT the motions of the plaintiff and the intervenors for summary judgement be, and the same, are hereby GRANTED; and further

---

[8] We recognize without deciding the anomaly inherent in the statute vis-a-vis the Presiding Judge. It may be that although his payments into the system are greater than his colleagues, his benefits will not be.

320

THAT the Director of Finance is ordered to calculate the plaintiff and intervenors' pension benefits in accordance with the opinion of even date.

It is further ORDERED:

THAT the government's motion for summary judgment be, and the same, is hereby DENIED; and further

THAT the government's counterclaim is DISMISSED WITH PREJUDICE.