In re CANDIDACY OF INDEPEN-
DENCE PARTY CANDIDATES
James MOORE, David Allen, and
Maureen Peterson, Petitioners,

v.

Mary KIFFMEYER, as Secretary of
State for the State of Minnesota,
Respondent.

No. A04–1775.

Supreme Court of Minnesota.

Nov. 10, 2004.

Michael B. Padden, Padden and Associates, P.A., David A. Schultz, Hamline University, St. Paul, MN, for Appellant.

Mike Hatch, Attorney General, Kristine Eiden, Chief Deputy Attorney General, St. Paul, MN, for Respondent.

Robin Michelle Wolpert, Dorsey and Whitney, Minneapolis, MN, for Amici Curiae.

## OPINION

BLATZ, Chief Justice.

On September 21, 2004, James Moore, David Allen, and Maureen Peterson[1] filed a petition under Minn.Stat. § 204B.44 (2002) requesting an order directing the respondent Mary Kiffmeyer, as Secretary of State of the State of Minnesota, to place the names of Independence Party nominees for the Minnesota House of Representatives and the United States House of Representatives on the November 2, 2004 general election ballot. The secretary of state had previously notified the Independence Party that its candidates would not appear on the general election ballot because none of the candidates had received the minimum number of votes required by Minn.Stat. § 204D.10, subd. 2 (Supp. 2003), in the September 14, 2004 primary election. After the parties and amicus curiae American Civil Liberties Union of Minnesota (ACLU–Minnesota) filed legal memoranda on an expedited basis, oral argument was heard on September 27, 2004. This opinion follows the order filed on September 27 granting relief to petitioners.

I.

The dispute in this case centers on interpretation and application of Minn.Stat. § 204D.10, subd. 2,[2] which creates a threshold minimum percentage of votes that must be received in the partisan primary election for a major political party's[3] candidates to appear as the party's nominees on the general election ballot.[4] The

---

1. According to the petition, each of the petitioners is a registered voter in Minnesota. In addition, petitioner Moore is the chair of the Minnesota Independence Party. Petitioner Allen is the Independence Party candidate for Minnesota House of Representatives from District 41B and received the most votes for that office in the Independence Party primary on September 14, 2004.

2. Section 204D.10, subd. 2, is referred to in this opinion as the "primary threshold law."

3. "Major political party" is defined in Minn. Stat. § 200.02, subd. 7 (2002). To qualify as a major political party a party must maintain a party organization and must either have had a candidate for Minnesota constitutional office, presidential elector, or U.S. Senator who received votes in each county in the preceding state general election and received votes from not less than five percent of the total number of individuals who voted in that election. A party can also qualify as a major political party by submitting a petition to the secretary of state containing the signatures of party members equal to at least five percent of the total number of voters in the preceding state general election.

4. Section 204D.10, subd. 2, provides:

   If at the state primary any individual seeking a major political party's nomination for an office receives a number of votes equal to ten percent of the average of the votes cast at the last state general election for state officers of that major political party within the district for which the office is voted, then all candidates of that major political party who receive the highest vote for an office are the nominees of that major political party

primary threshold law provides that if any *one* of the candidates of a major political party receives the required number of votes in the partisan primary, then *all* of that party's candidates who received the highest number of votes for an office at the primary are the party's nominees on the general election ballot. However, if none of the party's candidates receive the threshold number of votes, then *none* of the party's candidates are nominated. The threshold number of votes is defined in the primary threshold law as ten percent of the average number of votes received by that party's candidates for state constitutional offices in the previous general election. The primary threshold law also provides that if none of the party's candidates meet the threshold, then the individual candidates of that party may be nominated "by nominating petition as provided in sections 204B.07 to 204B.09." Minn.Stat. § 204D.10, subd. 2. If the party's candidates do not qualify as the party's nominees under section 204D.10, they cannot appear on the general election ballot.

The secretary of state determined that none of the 24 candidates of the Independence Party for the Minnesota or United States House of Representatives satisfied the ten percent threshold of the primary threshold law in the September 14, 2004 partisan primary election. After consulta-

tion with, and based on advice from, the Minnesota Attorney General, the secretary of state notified the Independence Party on September 17 that all of the Independence Party candidates for the state legislature and for congress would be excluded from the general election ballot based on the primary threshold law. Each of the three other major political parties [5] satisfied the statutory threshold, because at least one of their candidates reached the ten percent mark.[6]

## II.

Petitioners make two arguments in support of their request that the Independence Party candidates be placed on the general election ballot despite their failure to satisfy the primary vote threshold of Minn.Stat. § 204D.10, subd. 2.[7] First, petitioners argue that the primary threshold law was repealed in 1996 and therefore cannot be applied in this election. Second, petitioners argue if the primary threshold law was not repealed, its application to prevent Independence Party candidates from appearing on the general election ballot is unconstitutional as a violation of their rights under the United States and Minnesota Constitutions to associate for political purposes and to vote, as well as their rights to equal protection and due process. Although petitioners do not make the argument, the amicus curiae

political party. If none of the candidates of a major political party receive the required ten percent, then no candidates are nominated, and all the candidates of that major political party may be nominated by nominating petition as provided in sections 204B.07 to 204B.09. For the purposes of this subdivision, "state officers" mean the governor, lieutenant governor, secretary of state, state auditor, and attorney general.

5. Those parties are the Democratic–Farmer–Labor Party, the Green Party, and the Republican Party.

6. The nominees of these parties who did not individually meet the threshold nevertheless benefited from other nominee(s) in their party who met the threshold.

7. Apparently, petitioners do not challenge the secretary of state's determinations that none of the Independence Party candidates received the requisite number of votes in the primary election to satisfy the primary threshold law and that at least one of the candidates of each of the other major political parties did.

ACLU–Minnesota contends that the post-primary nominating petition process mentioned in the primary threshold law should be available to the Independence Party candidates.[8] The secretary of state disagrees that the primary threshold law was permanently repealed and that the nominating petition process is available after the primary election, but does not dispute petitioners' constitutional argument.

## A. Repeal of the Primary Threshold Law

Petitioners first argue that the primary threshold law is no longer in effect because it was repealed by the 1996 Legislature in Act of Apr. 2, 1996, ch. 419, § 9, 1996 Minn. Laws 982.[9] Section 9 provides: "Minnesota Statutes 1994, section 204D.10, subdivision 2, is repealed." That section clearly espouses the legislature's intent to repeal the primary threshold law.

The secretary of state contends that this repeal "expired" by the operation of section 10 of the 1996 Act, so that the primary threshold law remains applicable today. Section 10 of the 1996 Act provided that the "amendments" made by the act would expire if a particular decision of the Eighth Circuit Court of Appeals were reversed. Section 10 provided:

> This act is effective for the state primary election in 1996 and thereafter.
> The amendments made by this act are suspended during any time that the decision of the eighth circuit court of appeals in *Twin Cities Area New Party v. McKenna*, No. 94–3417MN, is stayed or the mandate of the court is recalled. *If the McKenna decision is reversed, the amendments made by this act expire*

*and the prior law is revived.* The purpose of this paragraph is to provide an orderly procedure for complying with the *McKenna* decision while retaining the prior law prohibiting simultaneous nominations to the extent permitted by the United States Constitution.

1996 Act, § 10, 1996 Minn. Laws at 982 (emphasis added). The Eighth Circuit *McKenna* decision referenced in section 10 had struck down the Minnesota statute that prohibited candidates from appearing on the ballot as the nominee of more than one party. Sections 2 through 8 of the 1996 Act amended Minnesota election laws to comply with the mandate of the Eighth Circuit decision to allow multi-party candidacies. *Id.,* §§ 2–8, 1996 Minn. Laws at 979–82. At the time the 1996 Act was enacted, the *McKenna* case was still pending in the United States Supreme Court under the name of *Timmons v. Twin Cities Area New Party*. In April 1997, the Supreme Court reversed the Eighth Circuit decision, *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997), triggering the "expire-and-revive" language of section 10.

Petitioners argue that the repeal of the primary threshold law by the 1996 Act did not "expire" with the reversal of *McKenna* in *Timmons* because section 10 states that only the "amendments" made by the Act expire, and section 9 was not an amendment, but a repealer. Petitioners contend that the plain language of the 1996 Act compels this conclusion because sections 2 through 8 each provides that a particular statute "is amended," whereas section 9 refers only to "repeal." Further, petition-

---

8. The amicus curiae did not interject this issue. Rather, in our order for briefing and hearing, the court raised the issue of availability of the nominating petition process referenced in the primary threshold law.

9. Chapter 419 of the 1996 session laws is referred to in this opinion as "the 1996 Act."

ers argue that section 9 served an entirely different purpose than the preceding sections of the 1996 Act, all of which dealt with the issue of multi-party candidacies, whereas section 204D.10, subd. 2, and its repeal have nothing to do with multi-party candidacies. Petitioners assert that because the primary threshold law had nothing to do with multi-party candidacies, there was no reason to revive it based on the reversal in *Timmons*, as there was for the statutes amended by the 1996 Act. Petitioners argue that further evidence that the primary threshold law was permanently repealed is (1) that the primary threshold law was not applied in the 2000 elections, (2) that the legislature has made no provision for post-primary nomination by petition, even though the nomination process is expressly mentioned in the primary threshold law, and (3) that the primary threshold law has been preempted by an entirely new "system of campaign financing and regulation of political parties and ballot access."

The secretary of state argues that the primary threshold law remains in effect because its repeal by the 1996 Act was "expired" by the reversal of *McKenna* in *Timmons*. The secretary of state asserts that the section 9 repealer was part of the "amendments" made in the 1996 Act and that the primary threshold law was encompassed in the "revival of the prior law" provided for in section 10 in the event of *McKenna's* reversal. The keystone of the secretary of state's argument that the primary threshold law remains in effect is

that the legislature amended the primary threshold law in 2003. *See* Act of May 27, 2003, ch. 112, art. 2, § 50(a), 2003 Minn. Laws 680. The 2003 amendment deleted the phrase "state treasurer" from the primary threshold law as part of broader legislation eliminating that state office. The secretary of state contends that the 2003 amendment, as well as two previous legislative attempts to amend the primary threshold law after 1996, demonstrate that the legislature did not think the subdivision had been permanently repealed in 1996.

### B. Nomination by Post–Primary Nominating Petition

The primary threshold law provides that if none of the candidates of a major party are nominated because of the failure of all of the party's candidates to meet the ten percent threshold, "all of the candidates of that major political party may be nominated by nominating petition as provided in sections 204B.07 to 204B.09." Minn.Stat. § 204D.10, subd. 2. The secretary of state asserts that the nominating petition process referenced in the primary threshold law is not available at this time to the candidates of the Independence Party because the deadline for filing nominating petitions is 56 days *before* the state primary. Minn.Stat. § 204B.09, subd. 1(a) (2002).[10] Petitioners do not disagree with this interpretation. Moreover, at oral argument they appeared to assert that even if a post-primary nominating petition pro-

---

**10.** The secretary of state explains that the primary threshold law, including the safety net of nominating petition access to the ballot, was originally enacted in 1939, and the same legislation established the deadline for filing nominating petitions as 30 days before the general election. Consequently, when the primary threshold law was first enacted, the deadline for filing nominating petitions was *after* the primary election, and use of nomi-

nating petitions by candidates who failed to satisfy the primary election threshold was feasible. In 1961, the deadline for filing nominating petitions was changed to 56 days *before* the primary election, eliminating the post-primary nominating petition process, but the primary threshold law's reference to nominating petitions was not changed. *See* Act of Apr. 20, 1961, ch. 606, §§ 16, 19, 22, 1961 Minn. Laws 1117–19.

cess were made available under the primary threshold law, the law would nonetheless violate their constitutional rights because of the undue burden of obtaining the required signatures in the short time available.

The amicus curiae ACLU–Minnesota does, however, argue that the nominating petition process should be available, despite the conflict between the provision for post-primary nominating petitions in the primary threshold law and the pre-primary deadline established for nominating petitions in Minn.Stat. § 204B.09. Amicus contends that as a matter of statutory interpretation the more recent and more specific provision—the primary threshold law allowing post primary nominating petitions—should prevail over the pre-primary deadline provision. *See* Minn.Stat. § 645.26, subd. 1 (2002). Moreover, amicus argues that applying the section 204B.09 deadline to prohibit post-primary nominating petitions would violate the canon of statutory construction that statutes should be read to give effect to all of their provisions. *See* Minn.Stat. § 645.16 (2002). We conclude that we do not need to decide these preliminary issues because the constitutional issue is determinative.

### C. Constitutionality of the Primary Threshold Law

■ Petitioners argue that by prohibiting access to the general election ballot for Independence Party candidates the primary threshold law violates petitioners' rights protected under the First and Fourteenth Amendments to the United States Constitution to vote and to associate for the advancement of their political beliefs, as well as their rights to equal protection of the laws and due process. Petitioners also assert analogous rights under the Minnesota Constitution.

Petitioners argue that these constitutional rights are infringed because of the discriminatory impact the primary threshold law has on Independence Party candidates and their supporters. Petitioners point out that the number of votes needed to satisfy the ten percent threshold of the statute is different in each legislative district and is different for each party within a district. According to petitioners, the two "old and well-established" major political parties easily satisfy the threshold, but the statute imposes an unfair burden for less-established major political parties. Disparate treatment is also evidenced, petitioners assert, by the fact that the Green Party was able to satisfy the threshold with only 35 votes, but the Independence Party was required to receive over twice as many votes in the same district. Moreover, petitioners argue minor political party candidates who can use the nominating petition process need not satisfy the ten percent threshold at all. Petitioners assert that the primary threshold law denies access to the ballot to the political parties that have "gained sufficient momentum to threaten the well-established major parties." Petitioners contend that such burdens must be subjected to strict scrutiny and cannot survive unless they are narrowly tailored to fulfill a compelling state interest.

The secretary of state does not disagree with petitioners' constitutional arguments. Although pointing out that the United States Supreme Court has recognized the right of states to require candidates and political parties to make some preliminary showing of support in order to qualify for a place on the ballot, citing *Munro v. Socialist Workers Party,* 479 U.S. 189, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986), the secretary of state explains that the Minnesota primary threshold law imposes a burden on candidates that is significantly different than the statute upheld in *Munro,* because

the number of votes required can be significantly different for different parties in the same election year. The secretary of state concludes "[i]t is, therefore, unclear what the State's interest is in imposing the voting threshold set forth in section 204D.10, subdivision 2."

■■■ Denial of a candidate's access to the ballot implicates important constitutional rights that are central to preservation of our democracy: the right to vote and the right to associate in pursuit of common political ends. *E.g., Anderson v. Celebrezze,* 460 U.S. 780, 787–88, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). It is equally well-established that to maintain fair, honest and orderly elections, states may impose regulations that in some measure burden the rights to vote and associate. *Id.* at 788. In *Timmons,* the Supreme Court summarized the analytical approach used to address these competing interests in a challenge to a state's electoral regulations:

> When deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the "character and magnitude" of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary. Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's "'important regulatory interests'" will usually be enough to justify "'reasonable, nondiscriminatory restrictions.'" No bright line separates permissible election related regulation from unconstitutional infringements on First Amendment freedoms.

520 U.S. at 358–59, 117 S.Ct. 1364 (citations omitted); *see also Clayton v. Kiffmeyer,* 688 N.W.2d 117, 128–29 (Minn. 2004). Petitioners argue, and respondent agrees, that the discriminatory treatment and denial of access to the ballot effected by the primary threshold law are not justified by any compelling, or even rational, state interest.

The irrationality and arbitrariness of the primary threshold law are evident in several aspects of the statute's operation. First, there is a different primary vote threshold applicable to different political parties. The result is that Independence Party candidates with more demonstrated voter support than Green Party candidates are nevertheless denied access to the general election ballot. This result supports the conclusion that the primary threshold law cannot be justified as a statute that restricts ballot access to candidates who demonstrate some minimum level of support.[11] Moreover, as petitioners point out, there is the incongruity that the Independence Party has qualified as a major political party based on the strength of the votes it received at the last general election. By statute, it retains that major political party status until it fails to gain the requisite voter support at another general election. Minn.Stat. § 200.02, subd. 7(d) (2002). Nevertheless, the primary threshold law deprives candidates of a ma-

---

11. We are less convinced that the primary threshold law discriminates in favor of long-established major political parties. Petitioners speculate that it is easier for such parties to satisfy the primary voting requirement, but those parties must reach a higher vote threshold in the primary if they received greater support in the previous general election. Logic suggests that the ability to meet the primary threshold may be more a factor of general voter turnout at the primary and the existence of intraparty contests in the primary, which would likely draw more voter interest.

jor political party access to the general election ballot based on the party's primary results. Finally, although the primary threshold law purports to provide an alternative process for access to the general election ballot through nominating petitions, the statutory reference is to a petition process that is not available after the primary election.

■ In light of these characteristics of the challenged law and the unusual circumstance that the state, through respondent secretary of state and her counsel, the Minnesota Attorney General, acknowledges that there is no rational state purpose served by the primary threshold law, we need not engage in the weighing of burdens and state regulatory interests prescribed in *Timmons*. In the absence of any suggested rational purpose for the law, we have no difficulty concluding that by denying Independence Party candidates access to the general election ballot the primary threshold law violates petitioners' constitutional rights to vote and to associate for the advancement of political beliefs under the First and Fourteenth Amendments.[12] On that basis, we ordered the secretary of state to certify the candidates of the Independence Party who received the most votes in the primary as the nominees of that party for placement on the general election ballot.

Petition granted.

ANDERSON, G. BARRY, J., not having been a member of this court at the time of

the argument and submission, took no part in the consideration or decision of this case.

12. We noted in *Erlandson v. Kiffmeyer*, 659 N.W.2d 724, 732 n. 7 (Minn.2003), that our general practice is to avoid a constitutional ruling if another basis is available on which to decide the case. Nevertheless, as we did in *Erlandson*, we again address the constitutional issue presented without resolving statutory claims. This approach is appropriate where, as here, the unconstitutionality of the challenged law is conceded by the state, but resolution of contested statutory claims, which must occur on an expedited basis, could affect future issues of statutory interpretation. *Cf. id.*