STATE OF MINNESOTA

IN SUPREME COURT

A16-1533

Original Jurisdiction                                                    Per Curiam

Steve Carlson,

                    Petitioner,

vs.                                                       Filed:  December 28, 2016
                                                          Office of Appellate Courts
Steve Simon, Minnesota Secretary of State,

                    Respondent,

Minnesota State Legislature,

                    Respondent.

_____

Stephen W. Carlson, Saint Paul, Minnesota, petitioner pro se.

Lori Swanson, Attorney General, Nathan J. Hartshorn, Assistant Attorney General, Saint Paul, Minnesota, for respondent Steve Simon, Minnesota Secretary of State.

_____

S Y L L A B U S

Because the State has a legitimate interest in requiring write-in candidates for President of the United States to designate a vice-presidential candidate, Minn. Stat. § 204B.09, subd. 3 (2016), does not violate the First Amendment right of free association.

Petition denied.

Considered and decided by the court without oral argument.

1

OPINION

PER CURIAM.

In September 2016, after declaring his write-in candidacy for President of the United States for the 2016 general election, petitioner Steve Carlson filed a written request with the Secretary of State, asking him to count the votes cast for his candidacy. Minn. Stat. § 204B.09, subd. 3(a) (2016) (stating that "[a] candidate . . . who wants write-in votes for the candidate to be counted must file a written request" with the Secretary of State). Relying on subdivision 3(b) of section 204B.09, the Secretary of State refused to accept Carlson's request because he did not "include the name of a candidate for vice-president of the United States" with the request. Minn. Stat. § 204B.09, subd. 3(b) (2016) ("A candidate for president of the United States who files a request under [subdivision 3(a)] must include the name of a candidate for vice-president . . . ."). Carlson filed a petition with our court under Minn. Stat. § 204B.44(a)(4) (2016), asking us to direct the Secretary of State to accept his request to count the votes cast for his write-in candidacy because, Carlson asserted, requiring him to name a vice-presidential candidate imposes an unconstitutional burden on the First Amendment associational rights of the candidate and voters. In an order filed October 19, 2016, we denied Carlson's petition.[1] This opinion confirms the decision made in that order.

---

[1] Our order also dismissed the Minnesota State Legislature, which Carlson had named as a respondent to his petition. *Carlson v. Simon*, No. A16-1533, Order at 2 (Minn. filed Oct. 19, 2016). The Minnesota Legislature may have a duty to enact legislation regarding election procedures, but it does not have a duty to complete the "procedural and mechanical duties" for an election. *Schroeder v. Johnson*, 311 Minn. 144, 145, 252 N.W.2d 851, 852 (1976) (explaining that the historical analogue to section 204B.44 provides potential

2

On September 14, 2016, Carlson declared himself a write-in candidate for President of the United States and asked the Secretary of State to "ensure that all Minnesota election precincts count, tabulate and report" any write-in votes cast for his candidacy. Carlson acknowledged in his request that he did not designate a vice-presidential candidate for his write-in candidacy, but explained that if elected, he would "ask the Electoral College or Congress to choose the Vice-President." The Secretary of State notified Carlson that his request did not meet the requirements of Minn. Stat. § 204B.09, subd. 3 (2016), "because it does not include the name of your Vice-Presidential candidate and the name of at least one elector."[2]

Under the provision the Secretary of State cited, votes cast at an election for a write-in candidate are not counted unless the write-in candidate files a written request for counting with the Secretary of State. *See* Minn. Stat. § 204B.09, subd. 3; Minn. Stat. § 204C.33, subd. 1 (2016) ("[W]rite-in votes for a candidate for federal . . . office must not be counted unless the candidate has timely filed a request under section 204B.09, subdivision 3."). For the office of President of the United States, section 204B.09 also

---

candidates with a remedy "from the errors and omissions of those enumerated persons charged with properly completing the procedural and mechanical duties attendant to the election process"). As the Legislature is not one of the enumerated election officials whose actions are subject to correction under section 204B.44, *see* Minn. Stat. § 204B.44(a)(4) (providing relief for an error, omission, or wrongful act by "the secretary of state" or another official that has a "duty concerning an election"), we dismissed the Legislature from this proceeding.

[2] Carlson did not name a presidential elector in the written request submitted to the Secretary of State, but stated in his petition that he would do so. We therefore do not consider Carlson's constitutional challenge with respect to the requirement in section 204B.09 to name a presidential elector. Minn. Stat. § 204B.09, subd. 3(b).

3

requires the write-in candidate to designate a vice-presidential candidate and to name at least one presidential elector when requesting vote counting. Minn. Stat. § 204B.09, subd. 3(b).

After receiving the Secretary of State's notice, Carlson filed a petition with our court under Minn. Stat. § 204B.44 (2016). He asserts that the State does not have a legitimate interest in requiring a write-in presidential candidate to designate a vice-presidential candidate, and enforcing that requirement burdens the First Amendment associational rights of write-in candidates and the voters who support those candidates. Secretary of State Steve Simon asserts that the requirement to designate a vice-presidential candidate is constitutional under the balancing test applied in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) (holding that Ohio's early filing deadline for independent candidates imposed an unconstitutional burden on voting and associational rights). Relying on *Anderson*, Secretary Simon contends that the State has a substantial interest in treating all presidential candidates the same with respect to the information that candidates must provide to the Secretary of State and that requiring the designation of a vice-presidential candidate is a reasonable regulation that does not burden the First Amendment rights of either write-in candidates or voters.

We must decide whether requiring a write-in presidential candidate to name a vice-presidential candidate in order for any votes cast for the write-in candidate to be counted imposes an unconstitutional burden on the First Amendment associational rights of the

candidate or voters.[3] *See In re GlaxoSmithKline plc*, 732 N.W.2d 257, 267 (Minn. 2007) ("The freedom of association [from the U.S. Constitution] is a derivative right, recognized as necessary to make meaningful the enumerated First Amendment rights of speech, press, petition, and assembly."); *Minn. Fifth Cong. Dist. Indep.-Republican Party v. State*, 295 N.W.2d 650, 652 (Minn. 1980) ("The Constitution protects political association as well as individual political expression."). States have a legitimate interest in fairly and equitably regulating elections, and Minn. Stat. § 204B.09 (2016) does not expressly prohibit voters from casting a vote for a write-in candidate. We therefore apply a standard more flexible than strict scrutiny to Carlson's constitutional challenge. *See Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992) (recognizing that voting is a fundamental, but not absolute, right and that the interests of states in "assur[ing] that elections are operated equitably and efficiently" requires "a more flexible standard" when reviewing voting regulations); *Clark v. Pawlenty*, 755 N.W.2d 293, 311 (Minn. 2008) ("[T]he Supreme Court has employed a flexible approach in which the level of scrutiny is determined by the degree to which voters' rights are adversely affected by the challenged regulation.").[4]

---

[3] In his petition, Carlson refers to the alleged facial unconstitutionality of section 204B.09. Facial challenges are disfavored and impose a heavy burden on the challenger. *McCaughtry v. City of Red Wing*, 831 N.W.2d 518, 522 (Minn. 2013). The challenger who asserts a claim of facial unconstitutionality must prove that " 'the legislation is unconstitutional in all applications.' " *Id.* (citation omitted). To the extent that Carlson asserts a facial challenge to Minn. Stat. § 204B.09, this claim was not adequately supported in his petition and we therefore decline to consider it. *See Broehm v. Mayo Clinic Rochester*, 690 N.W.2d 721, 728 (Minn. 2005) (noting that we generally decline to consider issues that are not adequately briefed).

[4] We applied strict scrutiny to review a challenge to a statute that required independent candidates to declare that they would not seek or accept any party's support,

5

Specifically, we consider whether requiring a write-in presidential candidate to designate a vice-presidential candidate in order to have write-in votes cast for the candidate counted is a reasonable, nondiscriminatory restriction justified by an important regulatory interest of the State. *See Burdick*, 504 U.S. at 434.

We first consider whether requiring a write-in presidential candidate to designate a vice-presidential candidate unreasonably impacts the associational rights of candidates or voters. *See Anderson*, 460 U.S. at 789 (stating that a court must "first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate"); *Burdick*, 504 U.S. at 434 (noting that although all election regulations have an impact on the right to vote, "it can hardly be said that" the challenged Hawaii regulation "unreasonably interfere[s] with the right of voters to associate and have candidates of their choice placed on the ballot"). At the outset, we note that all candidates, write-in or nominated, must comply with the same requirement; that is, all presidential candidates must provide the Secretary of State with the name of a vice-presidential candidate. *See* Minn. Stat. §§ 204B.09, subd. 3(b) (requiring a write-in candidate to identify a vice-presidential candidate); 208.03 (2016) (requiring "the chair of the major political party" to certify to the Secretary of State, in addition to the names of presidential electors, "the names of the party candidates for president and vice president").

which even the State recognized restricted political association rights. *See Minn. Fifth Cong. Dist.*, 295 N.W.2d at 652. The Supreme Court has, however, "rejected the notion" that strict scrutiny must be applied to the review of every voting regulation. *Clark*, 755 N.W.2d at 311. Instead, "strict scrutiny is reserved for circumstances where the state imposes a 'severe' restriction on the right to vote." *Minn. Voters All. v. City of Minneapolis*, 766 N.W.2d 683, 689 (Minn. 2009) (citations omitted).

6

In addition, major party candidates must make these designations several weeks before write-in candidates. *Compare* Minn. Stat. § 208.03 (stating that "[a]t least 71 days before the general election" the names of party candidates must be submitted), *with* Minn. Stat. § 204B.09, subd. 3(a) (requiring a write-in candidate to notify the Secretary of State "no later than the seventh day before the general election"). These provisions suggest that any burden imposed on write-in candidates in naming a vice-presidential candidate is similar to, and because of the timing, probably less than, the burden shouldered by major-party candidates. *See Coal. for Free & Open Elections v. McElderry*, 48 F.3d 493, 498 (10th Cir. 1995) (concluding that any burden imposed on write-in candidates to declare elector nominees "approximately one month after the latest date on which recognized parties must declare their elector nominees" was "not as severe as the burdens placed on recognized parties").

Regarding ballot access, the plain language of Minn. Stat. § 204B.09 does not expressly restrict access to the ballot for write-in candidates. *See, e.g.*, *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) (concluding that a Minnesota law that prohibits more than one political party from nominating the same candidate did "not directly limit the party's access to the ballot" because the law "only . . . rul[ed] out those few individuals who . . . have already agreed to be another party's candidate").[5] In fact,

---

[5] In *In re Candidacy of Independence Party Candidates v. Kiffmeyer*, 688 N.W.2d 854, 860-61 (Minn. 2004), we held that a statute that imposed a threshold vote percentage in the primary election for a party's nominees to appear on the general election ballot unconstitutionally denied access to the ballot. In that case, however, the State conceded that "the discriminatory treatment and denial of access to the ballot . . . [were] not justified

7

the ballot for a general election must include "blank lines containing the words 'write-in, if any' " for every office on the ballot in order to allow a "voter [to] write in the names of individuals whose names are not on the ballot." Minn. Stat. § 204B.36, subd. 2 (2016). Thus, write-in candidates always have access to the ballot in Minnesota; the only question presented by this petition is whether the requirements imposed by Minn. Stat. § 204B.09 for counting the votes cast for those candidates burden voting rights.

In addition to its silence on candidate access to the ballot, Minn. Stat. § 204B.09 imposes no restrictions on the right of voters to cast a vote for a write-in presidential candidate. To the contrary, the statute *assumes* that some voters will vote for a write-in candidate because it addresses the circumstances in which write-in votes for the candidate will be counted. *See* Minn. Stat. § 204B.09, subd. 3(a)-(b) (stating that a candidate for "president of the United States" who "wants write-in votes for the candidate to be counted must file a written request" with the appropriate election official). The only circumstances in which write-in votes cast for a candidate are not counted are when the candidate does not file a timely request for vote counting or, in the case of a write-in presidential candidate, a vice-presidential candidate or elector is not designated. That result, however, is due to the candidate's decisions, not voter restrictions. *See Burdick*, 504 U.S. at 436-37 (explaining that Hawaii's prohibition on write-in candidacies imposes only a limited burden on voters and associational rights because alternative means to access the ballot demonstrate that "any burden . . . is borne only by those who fail to identify their candidate

_____

by any compelling, or even rational, state interest." *Id.* at 860. We therefore did not apply the balancing test adopted in *Anderson* and applied in *Timmons*. 688 N.W.2d at 861.

8

of choice until days before the primary"); *Fulani v. Smith*, 640 So. 2d 1188, 1190 (Fla. Dist. Ct. App. 1994) (holding that a filing deadline for write-in candidates "is '*de minimus*,' and can by no stretch of the imagination be said to impose an unreasonable burden upon prospective candidates, their parties, or their supporters"). As the statute does not restrict candidate access to the ballot or prohibit voters from voting for a write-in candidate, we conclude that any burden imposed by the requirement in Minn. Stat. § 204B.09, subd. 3, to name a vice-presidential candidate is, at most, de minimus.

Having determined that any burden is only slight or de minimus, we next consider whether the State's asserted interests in requiring write-in candidates for President to designate a vice-presidential candidate are sufficient to outweigh the limited burden the statute imposes. In doing so, we recognize that "the State need not establish a compelling interest to tip the constitutional scales in its direction." *Burdick*, 504 U.S. at 439. Rather, the State need only establish that its legitimate interests are "sufficient to outweigh the limited burden" that Minn. Stat. § 204B.09, subd. 3, imposes on write-in candidates. *Burdick*, 504 U.S. at 440.

The State identified two interests advanced by requiring a write-in candidate for President to designate a vice-presidential candidate when requesting that write-in votes be counted: ensuring voters have a voice in the selection of the Vice-President, and treating all presidential candidates equally by subjecting them to the same requirements.

As to the first interest, Carlson argues that the State's interest in requiring the designation of a vice-presidential candidate is not legitimate because the United States Congress or the Electoral College can choose a Vice-President if a write-in presidential

candidate is elected without a designated vice-presidential candidate. Congress, however, counts the votes cast for President and Vice-President, 3 U.S.C. § 15 (2012); Congress does not choose the Vice-President.[6] Further, the Secretary of State must certify the names of the presidential and vice-presidential candidates to the county auditors because a vote cast for those candidates is deemed to be a vote for the candidate's electors. *See* Minn. Stat. § 208.04, subd. 1 (2016). Then, each state's electors vote by ballot for two candidates, a President and a Vice-President. *See* U.S. Const. art. II, § 1, cl. 3 ("The Electors shall . . . vote by Ballot for two Persons . . . ."); *id.* amend. XII ("The Electors . . . vote by ballot for President and Vice-President . . . ."); 3 U.S.C. § 8 (2012) ("The electors shall vote for President and Vice President . . . ."); *see also* Minn. Stat. §§ 208.06 (requiring electors to meet "at the State Capitol" to "vote for president *and* vice president" (emphasis added)); 208.46 (2016) (requiring electors, "[a]t the time designated for elector voting," to cast votes "for the offices of president and vice president"). Minnesota's electors must also pledge "to serve and to mark" ballots for President and Vice-President "for the nominees . . . of the party that nominated" the elector, or for an unaffiliated candidate and that candidate's "vice-presidential running mate." Minn. Stat. § 208.43 (2016).[7]

---

[6]     The United States Senate may choose a Vice-President if a tie results when the electoral votes are counted. *See* U.S. Const. amend. XII.

[7]     An "unaffiliated" candidate is a "candidate for president who qualifies for the general election ballot . . . by means other than nomination by a political party." Minn. Stat. § 208.41(e) (2016). We have not decided whether a write-in candidate is an "unaffiliated presidential candidate" within the meaning of Minn. Stat. § 208.43, but we need not do so in order to decide here that the interests advanced by the State for requiring the designation of a vice-presidential candidate are legitimate.

10

It is well-established that the states have broad power over the mechanics of the electoral process. *See, e.g.*, *Williams v. Rhodes*, 393 U.S. 23, 29 (1968) (noting that Article II of the U.S. Constitution confers "extensive power to the States to pass laws regulating the selection of electors"); *see also* U.S. Const. art. II, § 1 (stating that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct," the State's electors). Thus, the State's insistence on having a write-in candidate designate a vice-presidential candidate to count the votes cast for the write-in candidate is a reasonable requirement that eases the State's ability to comply with the electoral voting process and promotes an orderly election process. *See Storer v. Brown*, 415 U.S. 724, 730 (1974) ("[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.").

Similarly, the State's decision to impose the same requirement on all presidential candidates, to identify a vice-presidential candidate, promotes uniformity in the election process. Carlson argues that major-party candidates, while also bound by the vice-presidential nominee requirement, "are not hurt by this requirement" because those candidates "are on the ballot automatically." This assertion is not entirely correct. Major-party candidates must provide the Secretary of State with the same information that is required of write-in candidates—a presidential candidate, a vice-presidential candidate, and electors—in order to secure placement on the ballot. *See* Minn. Stat. § 208.03.

Based on our analysis, we conclude that the requirement to name a vice-presidential candidate when requesting that votes cast for a write-in presidential candidate be counted

is a reasonable regulation that promotes the State's interest in the orderly administration of the election and electoral processes. We therefore hold that the requirement for write-in candidates to designate a vice-presidential candidate, *see* Minn. Stat. § 204B.09, subd. 3, does not violate the associational rights protected by the First Amendment to the U.S. Constitution.

Finally, Carlson admits that he did not comply with the statutory requirements for requesting that write-in votes for his candidacy be counted. Because we apply a strict-compliance standard to candidates' election filings, *see Anderson v. Ritchie*, 819 N.W.2d 445, 446 (Minn. 2012) ("Candidates for elective office must strictly comply with the requirements for filing for office."), the Secretary of State did not err in rejecting Carlson's request to count votes cast for his write-in candidacy.

Petition denied.