STATE OF MINNESOTA

IN SUPREME COURT

A25-0354

Hennepin County

Dennis Walsh,

Appellant,

vs.

City of Orono, Minnesota, et al.,

Respondents.

Hudson, C.J.
Concurring in part, dissenting in part,
Thissen, Moore, III, JJ.
Withdrew from participation, Hennesy, J.

Filed:  December 31, 2025
Office of Appellate Courts

_____

Nicholas J. Nelson, Douglas P. Seaton, James V.F. Dickey, Austin M. Lysy, Upper Midwest Law Center, Minnetonka, Minnesota, for appellant.

Charles N. Nauen, David J. Zoll, Rachel A. Kitze Collins, R. David Hahn, Lockridge Grindal Nauen PLLP, Minneapolis, Minnesota, for respondents.

_____

S Y L L A B U S

1.      The claims in the petition filed before the district court under Minnesota Statutes section 204B.44 fall within the scope of that statute because the claims allege errors involving respondents' duties concerning a specific election.

2.      Minnesota Statutes section 412.02, subdivision 2a, authorizes a statutory city to call for a special election to fill a city council vacancy before the next regular city

1

election based on a special-election ordinance enacted after a person was initially appointed to fill the vacancy.

3.     A statutory city does not violate article VIII, section 5, of the Minnesota Constitution regarding the removal of inferior officers when it calls for a special election to fill a city council seat vacated by a sitting councilmember's resignation.

Affirmed.

O P I N I O N

HUDSON, Chief Justice.

This case presents the issue of whether a statutory city may apply a special-election ordinance—specifically, an ordinance identifying the circumstances under which a special election to fill a vacancy in a city office will be held before the next regular city election—to a vacancy that occurred before the ordinance was enacted. On November 12, 2024, Matt Johnson resigned from his seat on the Orono City Council with more than two years remaining until the expiration of his term. The mayor appointed Claire Berrett to fill his seat. The City of Orono did not have a special-election ordinance at the time of Johnson's resignation. The Orono City Council subsequently passed a special-election ordinance, and based on that ordinance, it adopted a resolution to hold a special election for the city council seat on May 13, 2025.

Appellant Dennis Walsh, the former mayor who appointed Berrett, filed a petition in district court pursuant to Minnesota Statutes section 204B.44 seeking to quash the special election. He argued that for statutory cities that do not have a preexisting special-election ordinance in place, the plain language of Minnesota Statutes section 412.02,

2

subdivision 2a, requires a duly appointed official to serve the duration of the term to which they were appointed and that a special election for this vacancy cannot be called until the next regular city election. He also argued that holding a special election before the next regular city election when the city did not have a preexisting special-election ordinance in place would divest the appointed councilmember of her right to hold the seat, in violation of the Minnesota Constitution.

On March 3, 2025, the district court denied Walsh's petition. Walsh filed a petition for accelerated review with this court, which we granted. On May 9, 2025, we issued an order with opinion to follow affirming the district court's decision to deny Walsh's petition to quash the special election. This opinion explains the reasons for our decision.

## FACTS

Orono (the City) is a statutory city, meaning that it "has not adopted a home rule charter pursuant to the constitution and laws," Minn. Stat. § 410.015, and has "only those powers expressly conferred by statute or implied as necessary in aid of those powers." *City of Waconia v. Dock*, 961 N.W.2d 220, 229 (Minn. 2021) (citation omitted) (internal quotation marks omitted). On November 12, 2024, Orono City Councilmember Matt Johnson submitted his letter of resignation to the Orono City Council (the Council). Johnson had been elected in 2022 and was set to serve a four-year term that would have expired on December 31, 2026. *See* Minn. Stat. § 412.02, subd. 1 (setting four-year terms for statutory city councilmembers). That same day, the Council accepted Johnson's resignation and declared a vacancy on the Council. *See* Minn. Stat. § 351.02(2) ("Every office shall become vacant on the happening of either of the following events, before the

3

expiration of the term of such office: . . . the incumbent's resignation . . . ."); Minn. Stat. § 351.01, subd. 2 (stating that "a resignation is effective when it is received by the officer, body, or board authorized to receive it").

On November 25, 2024, Dennis Walsh, then the mayor of Orono, moved the Council to appoint Claire Berrett to fill Johnson's vacancy; the motion was seconded by a councilmember. The motion failed in the Council on a tied two-to-two vote, which enabled the mayor to directly appoint Berrett to the seat. *See* Minn. Stat. § 412.02, subd. 2a ("In case of a tie vote in the council, the mayor shall make the appointment" for a vacancy in the office of a councilmember in a statutory city.). Berrett took her oath of office that same day.

At the time of Councilmember Johnson's resignation, Orono did not have a municipal ordinance governing special elections for city offices. On February 10, 2025, the Council met to consider whether Orono should adopt a special-election ordinance.[1] After some discussion, the Council voted to adopt Ordinance No. 307, which created a new special-election provision.[2] In relevant part, the ordinance says "[a]fter a vacancy is declared on the city council and a person appointed to fill the vacancy, a special election

---

[1]     When using the term "special-election ordinance," we mean an ordinance adopted by a statutory city indicating "under what circumstances it will hold a special election to fill a vacancy" in a city office "other than a special election held at the same time as the regular city election." Minn. Stat. § 412.02, subd. 2a.

[2]     Ordinance No. 307 has since been codified into the Orono City Code. *See* Orono, Minn., Code of Ordinances §§ 1.12.020, 1.12.030 (2025). The language in the code of ordinances does not exactly match Ordinance No. 307. We use the language in Ordinance No. 307 because it was operative on February 10, 2025, when the special election was ordered. *See* Res. 7554, Orono City Council (Feb. 10, 2025).

shall be held pursuant to Minn. Stats. § 412.02, subd. 2a, if there are more than 365 days remaining until the next general election." Orono, Minn., Ordinance 307, § 1 (as passed Feb. 10, 2025). The ordinance defines "vacancy" as "occur[ring] for the reasons stated in Minnesota Statute section 351.02 or other state law."[3] *Id.* The ordinance authorizes the Council to adopt a resolution to set the date for the special election. *Id.* And it states that the ordinance "shall take effect immediately" and "apply to all special elections required as of the date of passage of this ordinance including any special elections relating to a vacancy which occurred with more than two years remaining." *Id.* at § 2.

At the same meeting, the Council voted to adopt Resolution No. 7554, which ordered a special election to be held on Tuesday, May 13, 2025, "to fill the vacancy on city council." Res. 7554, Orono City Council (Feb. 10, 2025). This date was before Orono's next regular city election, which will be held on November 3, 2026.

Five days after the passage of the ordinance, Walsh filed a "Petition for Correction of Errors and Omissions" in Hennepin County district court pursuant to Minnesota Statutes section 204B.44. He sought to quash the Orono special election based on two principal theories. First, he asserted that Minnesota Statutes section 412.02, subdivision 2a, which addresses vacancies in offices in statutory cities, bars Orono from applying a special-election ordinance when a person has already been appointed to fill the vacancy. Second, he argued that the Council's passage of Resolution No. 7554, calling for a special election, unconstitutionally divested Berrett of her right to hold her seat for the remainder of the

---

[3]    A vacancy arises upon "the incumbent's resignation." Minn. Stat. § 351.02(2).

term, in violation of article VIII, section 5, of the Minnesota Constitution. Respondents City of Orono and Christine Lusian, in her official capacity as City Clerk of the City of Orono, opposed the petition. They argued that Minnesota Statutes section 412.02, subdivision 2a, empowered Orono to pass a special-election ordinance and apply it to a vacancy that arose before the ordinance was enacted and that Orono did not unconstitutionally divest Berrett of her seat.

On March 3, 2025, the district court denied Walsh's petition. The court found that section 412.02, subdivision 2a, required Orono to hold a special election for a successor to fill the unexpired portion of Johnson's term at or before the next regular city election. It also dispensed with Walsh's argument that Orono could not apply its special-election ordinance to a vacancy that occurred before the ordinance was enacted. The court thus declined to quash the May 13, 2025 special election.

Walsh appealed and filed a petition for accelerated review in this court, which we granted. On May 9, 2025, after oral argument, we affirmed the denial of Walsh's section 204B.44 petition in an order with opinion to follow.[4]

**ANALYSIS**

The primary question before us is whether Minnesota Statutes section 412.02, subdivision 2a—which governs vacancies on a city council in statutory cities—allows a city council to apply a special-election ordinance to a vacancy that was filled by appointment before the ordinance was enacted. If so, we must also address whether doing

---

[4] Orono held its special election on May 13, 2025, which precedes the publication of this opinion.

6

so unconstitutionally divests Berrett of her seat on the Council under article VIII, section 5, of the Minnesota Constitution. But before we address either of these issues, we must first address respondents' argument that Walsh's claims fall outside the scope of Minnesota Statutes section 204B.44.

I.

Minnesota Statutes section 204B.44 is the statute under which Walsh filed his petition to quash the election in district court.[5] The statute provides that "[a]ny individual may file a petition in the manner provided in this section for the correction of any of the following . . . which have occurred or are about to occur: . . . any wrongful act, omission, or error of any . . . municipal clerk, . . . or any other individual charged with any duty concerning an election."[6] Minn. Stat. § 204B.44(a)(4). A petition to quash an election based on an alleged violation of election law certainly pertains to "any wrongful act . . . concerning an election" as enumerated by the statute. *See Minn. Voters All. v. Walz*, 17 N.W.3d 732, 734–35 (Minn. 2025) (considering a petition brought under Minn. Stat. § 204B.44 challenging the issuance of a writ of special election). Walsh's claims—that Ordinance No. 307 and Resolution No. 7554 were improper under Minnesota Statutes

---

[5] The Legislature amended Minnesota Statutes section 204B.44 in its 2025 session. Act of May 23, 2025, ch. 39, art. 8, § 58, 2025 Minn. Laws 1195, 1333–34 (codified as amended at Minn. Stat. § 204B.44(c)-(f) (2025)). This change is irrelevant to our analysis.

[6] Such a petition is filed in district court "in the case of an election for county, municipal, or school district office." Minn. Stat. § 204B.44(b). But a section 204B.44 petition is filed with "the supreme court in the case of an election for state or federal office." *Id.*

section 412.02, subdivision 2a—fall within the scope of a permissible petition under section 204B.44.

Respondents, however, argue that, to the extent Walsh claims that Orono violated a constitutional duty to refrain from removing a councilmember when it passed Resolution No. 7554, that issue is not one "concerning an election" and thus is not properly brought in a section 204B.44 petition. We disagree.

We have previously addressed petitions brought under section 204B.44 alleging that a certain election process infringes upon the constitution.[7] In *Clark v. Pawlenty*, two petitioners filed a section 204B.44 petition seeking to strike an associate justice's name from an upcoming judicial ballot. 755 N.W.2d 293, 297 (Minn. 2008). Petitioners' primary claim was that printing the justice's name on the ballot would contravene the judicial vacancies clause of the Minnesota Constitution. *Id.* at 298; *see* Minn. Const. art. VI, § 8. Similarly, here Walsh alleges that the Council violated article VIII, section 5, of the Minnesota Constitution—the removal of inferior officers provision—when it passed

---

[7]  *See, e.g.*, *De La Fuente v. Simon*, 940 N.W.2d 477, 490, 492, 496–97 (Minn. 2020) (holding that the procedure established by Minn. Stat. § 207A.13, which allows a major political party to determine which candidates' names will be on the presidential nomination primary ballot, did not violate the Minnesota Constitution's prohibition against special privileges, the Presidential Eligibility Clause of the United States Constitution, or the petitioners' rights of free association under the First and Fourteenth Amendments to the United States Constitution); *In re Candidacy of Indep. Party Candidates Moore v. Kiffmeyer*, 688 N.W.2d 854, 860–61 (Minn. 2004) (holding that a statute that imposed a threshold vote percentage in the primary election for a major political party's nominees to appear on the general election ballot violated the First and Fourteenth Amendment rights of those candidates and their supporters); *Erlandson v. Kiffmeyer*, 659 N.W.2d 724, 732–34 (Minn. 2003) (holding that a statute prohibiting the mailing of a replacement ballot for the general election to certain absentee voters after the death of a candidate violated constitutional rights to equal protection).

Resolution No. 7554. *See* Minn. Const. art. 8, § 5 ("The legislature of this state may provide for the removal of inferior officers for malfeasance or nonfeasance in the performance of their duties."). Walsh claims that calling for the special election based on an ordinance enacted after Berrett was appointed violates the Minnesota Constitution because the election will impermissibly divest Berrett of her seat for a reason other than malfeasance or nonfeasance. In light of the connection between the special election and the alleged constitutional violation, we conclude that this claim also involves a "duty concerning an election." Minn. Stat. § 204B.44(a)(4). Walsh's constitutional claim, like Clark's, may appropriately be raised in a section 204B.44 petition.

Because we hold that both of Walsh's claims fall within the scope of section 204B.44, we now turn to the merits of his arguments.

II.

Walsh argues that the City of Orono violated Minnesota Statutes section 412.02, subdivision 2a, when it adopted Resolution No. 7554 calling for the special election on May 13, 2025.

Minnesota Statutes section 412.02, subdivision 2a, addresses the filling of vacancies in city offices in statutory cities.[8] Because Councilmember Johnson resigned on November 12, 2024, and his term would have expired on December 31, 2026, "more than two years remain[ed] in the unexpired term." Minn. Stat. § 412.02, subd. 2a. In these circumstances, the statute provides the following procedures:

---

[8] Chapter 412 of the Minnesota Statutes applies to statutory cities. Minn. Stat. § 412.016, subd. 1.

> [A] vacancy in an office shall be filled by . . . appointment until an election is held as provided in this subdivision. . . . [A] special election shall be held at or before the next regular city election and the appointed person shall serve until the qualification of a successor elected at a special election to fill the unexpired portion of the term. . . . The council must specify by ordinance under what circumstances it will hold a special election to fill a vacancy other than a special election held at the same time as the regular city election.

*Id.*[9]

In support of his position that the special election is unlawful, Walsh advances two primary arguments. First, he contends that the plain language of section 412.02, subdivision 2a, precludes a statutory city from adopting a special-election ordinance after a vacancy on the city council has been filled by appointment. He also argues that the statute prohibits using the special-election ordinance as authority to call for a special election for the seat sooner than the next regular city election. Second, he contends that section 412.02, subdivision 2a, requires there be a vacancy in a city office before calling for a special election, but he argues there was no vacancy on the Council to fill when the Council called for the special election. We address each argument in turn.

A.

Walsh asserts that if a statutory city wishes to hold a special election on a date other than the next regular city election, then the plain language of section 412.02, subdivision 2a, requires a city to have a special-election ordinance in place *before* the vacancy arises and a person is appointed to fill the seat. Because the City did not have an ordinance in place before Berrett was appointed to the seat, and because Orono wishes to

---

[9]    If the vacancy occurs "when less than two years remain in the unexpired term, there need not be a special election to fill the vacancy and the appointed person shall serve until the qualification of a successor." Minn. Stat. § 412.02, subd. 2a.

10

hold the special election on a date other than its next regular city election—November 3, 2026—he argues that holding a special election on May 13, 2025, violates the statute. Respondents disagree, contending that the statute's plain language allows a city to pass a special-election ordinance at any time before or after the vacancy arises.[10]

Interpreting the applicable statutory subdivision is a question of statutory interpretation, which we review de novo. *Harstad v. City of Woodbury*, 916 N.W.2d 540, 545 (Minn. 2018). To determine the statute's plain meaning, we construe the words and phrases of the statute "according to rules of grammar and according to their common and approved usage." *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015) (quoting Minn. Stat. § 645.08(1)). When the language of the law is unambiguous, our "role is to enforce the language of the statute and not explore the spirit or purpose of the law." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012). A statute is unambiguous when its language "is susceptible to only one reasonable interpretation." *State v. Culver*, 941 N.W.2d 134, 139 (Minn. 2020).

Walsh's plain-language argument that a special-election ordinance may only be applied to a vacancy that occurs after the ordinance is enacted hinges on one specific portion of the statute. The penultimate sentence of the statute says that "[t]he council must

---

[10]    All special elections, if not held at the time of the next regular city election, must be held on certain statutorily prescribed dates to ensure uniformity across the State. Minn. Stat. § 205.10, subd. 3a ("[A] special election held in a city or town must be held on one of the following dates: the second Tuesday in February, the second Tuesday in April, the second Tuesday in May, the second Tuesday in August, or the first Tuesday after the first Monday in November."). When we refer to an election being held "at any time," we mean that the special election may be held on any statutorily proscribed date before or after the next regular city election.

11

specify by ordinance under what circumstances it *will hold* a special election to fill a vacancy other than a special election held at the same time as the regular city election." Minn. Stat. § 412.02, subd. 2a (emphasis added). Walsh interprets "will hold" in the statute to mean that a special-election ordinance enacted under section 412.02, subdivision 2a, can only apply prospectively. Essentially, he argues that the statute is forward-looking as it relates to when the vacancy arises.

There is no dispute that if a special-election ordinance is in place before the vacancy occurs, then a statutory city is fully entitled to hold a special election "at or before the next regular city election." *Id.* However, if the vacancy arises when there is no ordinance in place, Walsh contends that the city is constrained to holding the special election on the same date as the next regular city election. The respondents, on the other hand, argue that the statute is forward-looking as to the special elections that have not yet occurred, not as to the vacancies. They assert that if a city determines that it wants to hold a special election when it does not already have an ordinance in place, then the statute requires a city to specify by ordinance what the circumstances for doing so will look like. We agree with the respondents' reading of the statute.

We construe "the words and phrases in the statute . . . according to rules of grammar . . . ." *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019) (citation omitted) (internal quotation marks omitted). The words "under what circumstances it will hold a special election to fill a vacancy" are plainly and unambiguously conjugated in the future tense. Minn. Stat. § 412.02, subd. 2a; *see The American Heritage Dictionary of the English Language* 1982 (5th ed. 2011) (defining "will" as "used to indicate simple futurity"). The

12

point of contention between the parties is, therefore, whether the future tense requires the city to have a special-election ordinance in place before the appointment is made.

Looking to the rest of the subdivision is instructive. One of the preceding sentences in the same subdivision says that "a special election *shall* be held *at or before* the next regular city election and the appointed person shall serve until the qualification of a successor elected at a special election to fill the unexpired portion of the term." Minn. Stat. § 412.02, subd. 2a (emphasis added). That clause establishes two things: (1) that a special election is required, *see State v. Humes*, 581 N.W.2d 317, 319 (Minn. 1998) ("The canons of statutory construction provide that 'shall' is mandatory."); and (2) a special election may occur at any proscribed date up to and including the date of the next regular election. Although Walsh encourages us to read the words "it will hold" in isolation, the rest of subdivision 2a indicates that a city may hold an election to fill a vacancy at any proscribed date "at or before the next regular city election"; there is no explicit temporal modifier for when the ordinance must be enacted. To require the special-election ordinance to be in place *before* the vacancy arose would be reading words into the statute that do not exist. *See Hutchinson Tech., Inc. v. Comm'r of Revenue*, 698 N.W.2d 1, 8 (Minn. 2005) ("[W]e will not add requirements to the statute beyond those specified by the legislature.").

The words "it will hold" are written in the future tense because the statute empowers city councils to decide by majority vote if they wish to hold their vacancy-filling elections on a future date other than their next regular city election. The full statutory clause says: "The council must specify by ordinance under what circumstances it will hold a special election to fill a vacancy other than a special election held at the same time as the regular

13

city election." Minn. Stat. § 412.02, subd. 2a. This use of the future tense, however, does not preclude a city from adopting a special-election ordinance and then declaring, based on that ordinance, that a special election will be held at a date before the next regular city election for a vacancy that was filled by appointment before the ordinance was enacted.[11] We thus agree with respondents that the statute's plain language allows a city to pass a special-election ordinance at any time before or after the vacancy arises.

B.

Walsh's second argument is that section 412.02, subdivision 2a, requires there to be a vacancy before a city council may decide there will be a special election for the vacancy. But he contends that there was no city council vacancy to fill at the time the Council adopted Resolution No. 7554 and declared a special election would be held on May 13, 2025. Walsh asserts that when Berrett was appointed and took her seat on the Council on

---

[11] We disagree with the concurrence/dissent that there is another reasonable interpretation of whether section 412.02, subdivision 2a, allows a city council to apply a special-election ordinance to a vacancy that predates the adoption of the ordinance. In asserting that the penultimate sentence of section 412.02, subdivision 2a, only adds value if it serves as a temporal limitation, the concurrence/dissent ignores that the default date for a special election is the next regular city election. The penultimate sentence provides the process that a city must follow to opt out of the default. By focusing on the penultimate sentence, the alternative interpretation ignores the mandate that "a special election *shall be held*" and reads ambiguity into the plain language of the statute. Minn. Stat. § 412.02, subd. 2a (emphasis added). The tools of statutory interpretation leave only one reasonable conclusion, so there is no gap left by the legislature and no ambiguity to resolve. Because we resolve this issue based on a plain language reading of section 412.02, subdivision 2a, we do not address the concurrence/dissent nor the parties' arguments about the legislative history or comments by the bill's authors on the House floor. *See Rohmiller v. Hart*, 811 N.W.2d 585, 589 (Minn. 2012) (stating "we will go beyond the plain language of the statute to determine the intent of the legislature" only "[w]hen the language is unclear or ambiguous.").

14

November 25, 2024, she became the incumbent of the seat and extinguished the vacancy for the remainder of the unexpired term. Walsh essentially argues that, because the vacancy was filled by Berrett, Orono would be improperly declaring a "new" vacancy by calling for a special election. We conclude that Walsh's argument is contrary to the language of the statute.

Section 412.02, subdivision 2a, empowers a city to fill the remainder of the unexpired term for a seat—if more than two years remain in the term—by holding a special election at a time other than the next regular city election. The city is not declaring a new vacancy when it seeks to fill that unexpired term. This reading is clearly mandated by the plain language of the statutory text. The statute states "a special election shall be held at or before the next regular city election and the *appointed person* shall serve until the qualification of a *successor* elected at a special election to fill the unexpired portion of the term." Minn. Stat. § 412.02, subd. 2a (emphasis added). The statute contemplates two different categories of officeholder: one is an initial appointee and one is elected at a special election to fill the remainder of the term.[12] The statute designates the appointee as temporarily filling the vacancy in anticipation of the elected successor. Stated differently, by the statute's own terms, even after a person has been appointed to temporarily hold the

_____

[12] The appointed person may run for the seat in the special election, and if they win the special election, they would initially be the appointee and then become the elected successor. *See Clark*, 755 N.W.2d at 307 (holding that the Minnesota Constitution does not bar a supreme court justice "from seeking election to the judicial office to which she was appointed" by the governor).

15

seat, a vacancy exists which a city must fill through a special election and this special election may "be held at or before the next regular city election." *Id.*

Walsh turns to several cases to support his argument that there is no vacancy on the Council because Berrett's appointment extinguished it. First, he cites *Minnesota Voters Alliance v. Walz*, 17 N.W.3d 732 (Minn. 2025). In *Minnesota Voters Alliance*, the governor called for a special election for a seat in the Minnesota House after the person recently elected to the seat submitted what he characterized as a resignation letter to the governor. *Id.* at 735. Because that person had never assumed his seat or taken his oath of office, we noted that "someone cannot 'resign' from an office they do not hold." *Id.* at 741. We concluded that the timing for issuing the writ was controlled by Minnesota Statutes section 204D.19, subdivision 4, and that the writ had been issued prematurely based on the provisions of that statute, and therefore, we quashed the writ for a special election.[13] *Minn. Voters All.*, 17 N.W.3d at 743.

But *Minnesota Voters Alliance* is inapposite. The statute at issue in that case, Minnesota Statutes section 204D.19, subdivision 4, governs special elections for the Legislature due to successful election contests and has no provision for temporarily filling a vacancy by appointment and then holding a special election to determine a successor. And here, there is no debate that section 412.02, subdivision 2a, was invoked when

---

[13] Minnesota Statutes section 204D.19, subdivision 4, says in relevant part, "If a vacancy results from a successful election contest, the governor shall issue 22 days after the first day of the legislative session a writ calling for a special election . . . ."

16

Councilmember Johnson created a vacancy, as opposed to the elected representative's actions in *Minnesota Voters Alliance*, which did not create a vacancy.

Walsh also cites *State ex rel. Dosland v. Holm*, 279 N.W. 218 (Minn. 1938), to assert that just because a city gives itself the power to fill a vacancy by ordinance does not mean it can use that power to *declare* a vacancy. Specifically, he points to the language in that opinion that says a "vacancy must exist before an election to fill it can be ordered." *Id.* at 220 (citation omitted). But *Holm* is materially distinguishable. There, a district court judge submitted a letter of retirement to the governor, but his retirement was not set to take effect until after the upcoming general election. *Id.* at 218. Because the judge had not relinquished the office by the time of the election, no election could be held for his successor—in sum, no vacancy existed, despite the governor's acceptance of the judge's letter of retirement. *Id.* at 220. That is the key distinction between *Holm* and this case. When Councilmember Johnson resigned, he unequivocally created a vacancy. *See* Minn. Stat. § 351.02(2) (stating that an office becomes vacant on "the incumbent's resignation"). *Holm* thus has no bearing on our decision here.

For these reasons, we reject Walsh's argument that there was no vacancy on the Council at the time the Council adopted Resolution No. 7554 calling for the May 13, 2025 special election. Instead, the plain language of section 412.02, subdivision 2a, provides for a two-step process for filling the vacancy if more than two years remain in the unexpired term: (1) a person is initially appointed to temporarily hold the seat, and then (2) there must be a special election for the person who will succeed the appointee for the remainder of the term. Although Berrett had already been appointed when the Council adopted

17

Resolution No. 7554, a vacancy still remained that had to be filled through a special election.

* * *

In sum, as to Walsh's claim regarding Minnesota Statutes section 412.02, subdivision 2a, we conclude that statute authorizes a statutory city to call for a special election before the next regular city election based on a special-election ordinance enacted *after* a person was initially appointed to fill the vacancy if more than two years remain in the unexpired term. The Council complied with this statute when it passed Ordinance No. 307 after Berrett was initially appointed to fill the vacant Council seat caused by Johnson's resignation and then relied on that ordinance to pass Resolution No. 7554 calling for a special election on May 13, 2025 to fill the remainder of Johnson's unexpired term. We therefore hold that Walsh failed to establish that respondents violated Minnesota Statutes section 412.02, subdivision 2a, when calling for the May 13, 2025 special election.

III.

Because we hold that the City of Orono acted within its statutory authority when it passed Resolution No. 7554 calling for a special election, we must address Walsh's second claim that holding a special election would unconstitutionally divest Berrett of her seat on the Council. Walsh argues that electing a successor would "remove" Berrett from her seat and thus trigger article VIII, section 5, of the Minnesota Constitution. That clause provides: "The legislature of this state may provide for the removal of inferior officers for malfeasance or nonfeasance in the performance of their duties." Minn. Const. art. VIII, § 5. Walsh contends that a special election is an impermissible form of removal from office

18

because it is not done on the basis of nonfeasance or malfeasance. The respondents, in turn, argue that the City did not "remove" Berrett from office but rather acted within its statutory duty to declare a special election to fill the remainder of the unexpired term. We agree with the respondents.

City councilmembers are inferior officers under the Minnesota Constitution. *See Jacobsen v. Nagel*, 96 N.W.2d 569, 571 (Minn. 1959). Typically, the removal of inferior officers clause of the Minnesota Constitution is implicated when a recall petition is filed. *See, e.g.*, *id.*; *Jacobs v. City of Columbia Heights*, 9 N.W.3d 536, 539 (Minn. 2024). Here, there was no affirmative action taken to recall Berrett from the seat, nor were there any allegations that she committed malfeasance or nonfeasance. *See Jacobsen*, 96 N.W.2d at 573 (laying out the three-part test for a malfeasance claim); *In re Proposed Petition to Recall Hatch*, 628 N.W.2d 125, 126 (Minn. 2001) (defining nonfeasance as "a failure to act"). We have not previously decided whether a special election to fill a vacancy that did not arise from a recall petition is considered a removal of an inferior officer.

Although it did not concern a special election, a similar question was raised in *State ex rel. Todd v. Essling*, a case upon which Walsh relies in support of his argument. 128 N.W.2d 307 (Minn. 1964). In that case, the governor appointed Essling to the Board of Tax Appeals. *Id.* at 309. After several months of Essling fully discharging his duties, a newly elected governor attempted to remove Essling from the seat and appoint another person. *Id.* at 310. We rejected the new governor's attempt to remove Essling, reasoning that "a recall of the appointment would operate as a removal from office in violation of the

appointee's right to continue in office subject only to a rejection by the senate or removal for cause." *Id.* at 311.

Walsh compares the facts in *Essling* to those in the case at hand. He asserts that Berrett is fully vested in her seat and has a right to continue to hold it. Although we agree that Berrett is fully entitled to temporarily hold the seat as an appointee, Walsh overlooks the plain and unambiguous command of section 412.02, subdivision 2a: Because more than two years remained in the unexpired term, Orono is obligated to hold a special election to determine Berrett's successor, whether at or before the next regular city election. The statute at issue is the key distinguishing factor from *Essling*. In *Essling*, we predicated our holding on the different statutory text governing that case, which said " '[a]ny vacancy shall be filled by the governor *for the unexpired term*.' " *Id.* at 310 (quoting Minn. Stat. § 271.01, subd. 2 (1964)) (emphasis added). That statute did not contemplate having appointees and successors. Once a person was appointed by the governor, that person clearly and unequivocally held the seat to the end of the term. Here, however, section 412.02, subdivision 2a, creates two categories of officeholder: one must be initially appointed, and the statutory city is then required to hold a special election to elect a successor. In this case, *Essling* stands for nothing more than the recognition that Berrett is fully vested in her seat only while she holds it as a temporary appointee.

Walsh contends that allowing Orono to hold a special election renders appointed officials indefinitely susceptible to the "political whims" of their elected fellow officeholders. But Walsh's concern is a political consideration that exists regardless of the controversy in this case. Even if we were to decide in Walsh's favor and hold that a

20

statutory city was required to have a special-election ordinance in place before the vacancy arose, that would not negate the city's ability to call for a special election to replace a new appointee. This is illustrated by the following hypothetical. Orono passes Ordinance No. 307 before Councilmember Johnson's resignation. Johnson resigns, and Berrett is appointed. At the next Council meeting, the Council decides that they wish to hold a special election before the next general city election. Orono would be fully entitled to hold that special election because it had passed the special-election provision before the vacancy arose. Walsh conceded as much when he stated in his principal brief, "[h]ad the Orono City Council enacted an ordinance allowing for a special election at a different time than the regular city election before the appointment of Berrett and then appointed her subject to a May 13, 2025 special election, that would probably have been valid . . . ."

This exemplifies the nature of the democratic system in which we live. A statutory city council can act—by a majority vote—within the proscriptions of the Legislature's laws for statutory cities. The Orono Council acted pursuant to section 412.02, subdivision 2a, when it voted to hold a special election for Berrett's seat.

In sum, the City of Orono did not unconstitutionally divest Berrett of her right to the seat. Holding a special election does not constitute a "removal" of an inferior officer because Berrett's appointment was always temporary and subject to end upon a special election. We therefore hold that Walsh has not established a violation of article VIII, section 5, of the Minnesota Constitution.

*　　*　　*

21

In conclusion, the claims in appellant's petition are appropriately addressed by a petition brought pursuant to Minnesota Statutes section 204B.44 because the claims allege errors involving respondents' duties concerning a specific election. As to the merits, however, both of appellant's claims fail. On the first claim, because more than two years remained in the unexpired term, Minnesota Statutes section 412.02, subdivision 2a, enables a statutory city to call for a special election to fill a city council vacancy before the next regular city election based on a special-election ordinance enacted after a person was initially appointed to fill the vacancy. On the second constitutional claim, calling for a special election does not implicate a removal of the appointee who holds the seat because the position is temporary until the election of a successor. For these reasons, the district court did not err when it denied Walsh's petition to quash the special election held on May 13, 2025.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court denying the section 204B.44 petition of appellant Dennis Walsh.

Affirmed.


HENNESY, J., withdrew from participation in this case.

22

CONCURRENCE & DISSENT

THISSEN, Justice (concurring in part and dissenting in part).

I agree with Part I of the court's opinion that Walsh's claims fall within the scope of Minnesota Statutes section 204B.44. But I disagree with Part II of the court's opinion regarding Minnesota Statutes section 412.02, subdivision 2a, and so I dissent. And because I dissent, I need not and do not express any opinion on Part III of the court's opinion regarding Walsh's constitutional claim.

Matt Johnson resigned from the Orono City Council (the Council) on November 12, 2024. When he resigned, more than two years remained of Johnson's four-year term, which began on January 1, 2022. Claire Berrett was appointed to fill the seat on November 25, 2024.

Under Minnesota Statutes section 412.02, subdivision 2a, Berrett's service as an appointed council member lasts "until the qualification of a [new councilmember] elected at a special election to fill the unexpired portion of the term." Because more than two years remained on Johnson's unexpired term, section 412.02 provides that the special election shall be held at the next regular city election unless the Council "specif[ies] by ordinance under what circumstances it will hold a special election to fill a vacancy other than a special election held at the same time as the regular city election." *Id.* Accordingly, Berrett's service lasts until the date of the next regular city election—November 3, 2026—unless a city ordinance provides otherwise.

In November 2024, when Johnson resigned and Berrett was appointed to fill the seat, the City of Orono (the City) had no ordinance specifying that an election to fill a

C/D-1

Council vacancy should be held at a time other than the next regular city election. On February 10, 2025, the Council voted to adopt Ordinance No. 307, which amended the City code to provide:

**Sec. 6-2. Definitions**
For the purposes of this section, the following terms shall have the following meanings:

*City* The City of Orono, County of Hennepin, State of Minnesota.

*General Election* A "general election" is an election held at regular intervals on a day determined by law or charter at which the voters of the state or any of its subdivisions choose by ballot public officials or presidential electors.

*Special Election* A "special election" is an election held at any time to fill vacancies in public offices.

*Vacancy* A vacancy occurs for the reasons stated in Minnesota Statute[s] Section 351.02 or other state law.

**Sec. 6-3. Special election timing**
After a vacancy is declared on the City Council and a person appointed to fill the vacancy, a special election shall be held pursuant to Minnesota Statute[s] Section 412.02, subd. 2a if there are more than 365 days remaining until the next general election. The Council may by resolution establish the dates of filing affidavits of candidacy for the office, the time for absentee balloting, and the dates of the special election, as well as other provisions for the effective administration of the elections. The special election must be held on one of the uniform election dates pursuant to Minn. Stat. [§] 205.10, subd. 3a.

Orono, Minn., Ordinance 307, § 1 (as passed Feb. 10, 2025). The ordinance also provided that it would "take effect immediately upon its passage and apply to all special elections required as of the date of passage of this ordinance . . . ." *Id.* at § 2. The Council then adopted Resolution No. 7554, which ordered a special election to be held on Tuesday,

May 13, 2025, "to fill the vacancy on city council." Res. 7554, Orono City Council (Feb. 10, 2025).

The central substantive question in this case is whether a city may hold an election to fill the vacancy before November 3, 2026—the next regular city election—despite the fact that, on the dates of the vacancy and the appointment of a council member to fill the vacancy, the city had no ordinance specifying that a special election to fill the council vacancy should be held before the next regular city election. The question is one of statutory interpretation.

The court appropriately starts with the text of section 412.02, subdivision. 2a, which provides in relevant part:

> [A] vacancy in an office shall be filled by council appointment until an election is held as provided in this subdivision. . . . If the vacancy occurs before the first day to file affidavits of candidacy for the next regular city election and more than two years remain in the unexpired term, a special election shall be held at or before the next regular city election and the appointed person shall serve until the qualification of a successor elected at a special election to fill the unexpired portion of the term. . . . The council must specify by ordinance under what circumstances it will hold a special election to fill a vacancy other than a special election held at the same time as the regular city election.[1]

Under the statute, a councilmember appointed to fill a vacancy under the circumstances in this case serves until the "qualification of a successor elected at a special election . . . ." *Id.*

---

[1]    Section 412.02, subdivision 2a, includes a second, one-sentence paragraph that states: "All of the provisions of the Minnesota Election Law are applicable to special elections as far as practicable." Consequently, for convenience, I will refer to the sentence of the statute stating that "[t]he council must specify by ordinance under what circumstances it will hold a special election to fill a vacancy other than a special election held at the same time as the regular city election" as the penultimate sentence of subdivision 2a.

The special election may be held "at or before" the next regularly scheduled election, but the default date for the special election is "the next regular city election." *Id.* That is so because the statute provides that if a council wants to hold a special election before the next regular city election it must do something additional: the council must "specify by ordinance under what circumstances it will hold a special election to fill a vacancy other than a special election held at the same time as the regular city election." *Id.*

With that background in mind, I turn to the question of whether a city code at the time a vacancy occurs and a new councilmember has been appointed to fill the vacancy governs the timing of a special election to fill the vacancy or whether a city can adopt a new ordinance changing the timing of a special election *after* the vacancy occurs and a new councilmember has been appointed. The statute, by its plain terms, does not directly answer the question one way or the other.[2] Therefore, we must fill in the gap the Legislature left using our tools of statutory interpretation and construction.

One reasonable way to fill in the gap is to say, as the court does, that the city is free to change the timing of a special election to fill a vacancy at any time. To support this position, the court relies on the omitted-case canon. According to the court and this canon, because nothing in the statute states when an ordinance must be adopted relative to the date of the vacancy and appointment of a new councilmember to fill the vacancy, we would have to read words into the statute—something like "[t]he council must specify by

---

[2] I agree with the court that the use of the words "it will hold" in the penultimate sentence of section 412.02, subdivision 2a, does not compel the conclusion that the ordinance setting the special election on a date before the next regular city election must be in place before the vacancy and a new councilmember's appointment.

ordinance *adopted before the vacancy occurs* under what circumstances it will hold a special election to fill a vacancy"—in order to find that the statute prohibits altering the default special election date after a vacancy occurs. And we have often said that we will not do that. *See, e.g.*, *Hutchinson Tech., Inc. v. Comm'r of Revenue*, 698 N.W.2d 1, 8 (Minn. 2005) (noting that we will not add requirements to a statute beyond those specified by the Legislature). The omitted-case canon, however, like all canons, "must be applied with judgment and discretion, and with careful regard to context." *In re Krogstad*, 958 N.W.2d 331, 335 (Minn. 2021).

Here, there are interpretive clues in the provision's structure which support another reasonable interpretation of the statute: that it requires a council to adopt an ordinance setting the date of a special election to fill a vacancy on a date other than the default date of the next regular city election *before* the vacancy occurs. *See State v. Beganovic*, 991 N.W.2d 638, 647 (Minn. 2023) (stating that "[t]he text and structure of the language are strong clues to the Legislature's intent"). In particular, even without the penultimate sentence, section 412.02, subdivision 2a, gives a statutory city the power to call a special election "at or before" the next regular city election. The penultimate sentence, which requires that a city have clear rules for deviating from the default special election date, does not add much to that existing power—and indeed seems to create a formal, but unnecessary, step—if it does not place a temporal limitation on adopting an ordinance.

Indeed, the legislative history—which I reach based on my determination that there are two reasonable ways of understanding how section 412.02, subdivision 2a, addresses the question of whether a council must adopt an ordinance before any vacancy and

appointing a new councilmember, *see Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 718 (Minn. 2014)—tells us the Legislature intended the ordinance outlined in the penultimate sentence to be in place before any vacancy and appointment of a new councilmember.

In 1999, the Legislature amended subdivision 2a in two relevant ways. Prior to 1999, the statute provided that, under the circumstances presented in this case, "a special election shall be held at the next regular city election." Minn. Stat. § 412.02, subd. 2a (1998). Stakeholders expressed concern that under the statute as written, if a councilmember died or resigned early in their term, a person who had not been elected by the people, but instead appointed by other councilmembers, would serve for a long period of time. *See* Hearing on S.F. 257, Sen. Comm. Elections., 81st Minn. Leg., Feb. 24, 1999, at 2:40–3:30 (audio file) (statement of Councilmember Dale Oldenburg, City of Jordan, Minn.), 8:14–8:30 (audio file) (statement of Sen. Robling). Accordingly, the bill was amended in committee to add the words "or before" to the statute to give a city the choice to wait until the next regular city election or to hold a special election before the next regular city election to fill a city council vacancy. *Id.* at 8:14–8:30 (audio file) (statement of Sen. Robling); Journal of the Senate 392 (81st Minn. Leg. Mar. 1, 1999) (Report of the Committee on Election Laws on S.F. 257). On March 11, 1999, the bill passed the Senate as amended. Journal of the Senate 623 (81st Minn. Leg. Mar. 11, 1999).

The House of Representatives took up Senate File 257 on April 8, 1999. The House Chief Author of the legislation, Representative Mark Buesgens, and his co-author, Representative Phil Carruthers, offered an amendment to make a second change to

section 412.02, subdivision 2a, adding the penultimate sentence. Journal of the House 1917 (81st Minn. Leg. Apr. 8, 1999). Representative Buesgens stated that there should "be a provision [in the statute] that if those cities, if they're going to change their special election process from what is currently in statute, that they specify that change in ordinance. I believe that is a very appropriate thing to add to this bill." H. debate on S.F. 257, 81st Minn. Leg., Apr. 8, 1999, at 47:31–48:06 (video file) (statement of Rep. Buesgens). Representative Carruthers stated even more plainly:

> The purpose [of the amendment] is just so that people, *before a vacancy occurs*, know how it's going to be handled so that it's not being handled on a case by case basis, where you know one time they have a special election and another time they do by appointment, and maybe the next time they do it by appointment, et cetera. So, that's the purpose of this.

*Id.* at 48:11–48:36 (video file) (statement of Rep. Carruthers) (emphasis added). The amendment adding the penultimate sentence was adopted. Journal of the House 1917 (81st Minn. Leg. Apr. 8, 1999). Thereafter, the House passed the bill as amended, *id.* at 1918, and the Senate subsequently passed the bill with the House amendments. Journal of the Senate 1407–08 (81st Minn. Leg. Apr. 9, 1999). This legislative history is a strong clue that a council must adopt an ordinance allowing deviation from the default date for a special election to fill a vacancy—the next regular city election—before the vacancy occurs.[3]

---

[3] Notably, the Council agenda from November 25, 2024—the day Berrett was sworn in—reflects that the lawyer advising the City also understood section 412.02, subdivision 2a, to require that an election to fill a Council vacancy had to be held at the next ordinary city election because the City had not adopted an ordinance authorizing an earlier special election prior to filling the vacancy by appointment:

I am not persuaded by the City's argument that requiring a statutory city to adopt an ordinance deviating from the default special election date before a vacancy occurs undermines the purpose the Legislature articulated for the language in section 412.02, subdivision 2a—to provide the residents of a city an earlier opportunity to cast a vote for a replacement city councilmember. First, the language of subdivision 2a authorizing a city to hold a special election "at or before the next regular city election" gives the city the *choice* to make that determination—it does not require the city to accelerate the election to a date before the next regular city election. Minn. Stat. § 412.02, subdivision 2a. The 1999 amendment also retained the preexisting default rule that a special election will be held at the next regularly scheduled election. *Id.* Moreover, the purpose of adding the penultimate sentence is to provide clear rules and stability—and avoid political gamesmanship—in scheduling special elections to fill city council vacancies after knowing the identity of any councilmember who vacates their seat and the person appointed to fill the vacancy.

\* \* \*

---

The statute [governing statutory cities] includes conditions where a special election is used to fill a vacancy. One of the conditions is that the city code contains a special election provision. The Orono code does not contain a special election section. After consulting with the Minnesota Secretary of State['s] office and legal review, the City Attorney concluded there is no authority for the [C]ity to adopting [sic] an ordinance authorizing a special election at a time other than the regular city election to fill a vacancy that has already been filled by appointment. Our next regular election is November 2026. Based on this interpretation, the person appointed will serve for the next two years.

At the time Johnson resigned from the Council and Berrett was appointed to fill the vacancy, the City did not have an ordinance specifying the circumstances under which it would hold a special election to fill a vacancy other than at the next regular city election. Accordingly, I conclude that, under section 412.02, subdivision 2a, the special election to fill the Council's vacancy could not be held before the next regular city election. Therefore, while I agree with the court that both of Walsh's claims fall within the scope of section 204B.44, I dissent from the court's determination that Walsh failed to establish that respondents violated Minnesota Statutes section 412.02, subdivision 2a, in setting the May 13, 2025 special election.

MOORE, III, Justice (concurring in part and dissenting in part).

I join the opinion of Justice Thissen concurring in part and dissenting in part.